## IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI

In re:                                                )
                                                      )
Deborah Gertrude Steiner,                             )          Case No. 23-41421-can13
                                                      )
            Debtor.                                   )
_____ )

### MEMORANDUM OPINION AND ORDER BARRING DEBTOR DEBORAH G. STEINER FROM FILING FURTHER BANKRUPTCY PETITIONS FOR TWO YEARS

This is the twelfth bankruptcy case Deborah G. Steiner has filed in thirteen years – more if counting the two intervening bankruptcy case filed by her husband, Neil Steiner. All but one were chapter 13 cases, and all were dismissed. This Court in three of those cases imposed in the dismissal orders increasingly lengthy bars on refiling. Ms. Steiner filed this case on October 11, 2023, a week after her eleventh bankruptcy case was dismissed for her failure to take the required prepetition credit counseling. The United States Trustee ("UST") promptly filed a motion to dismiss for abuse of the bankruptcy system, seeking imposition of a two-year bar.[1] Both the Court and the UST extended Ms. Steiner multiple opportunities to demonstrate – based on her assurances – that *this time* her case was a good faith filing and that *this time* she could achieve a confirmable plan. Because she was unable to do so in the more than a year her chapter 13 case was pending and because she breached the terms of her agreement to obtain confirmation within a reasonable time, the Court grants the UST's motion and imposes a two-year bar on refiling from the date of this order.

### Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. § 105(a). No party has disputed that this is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O) and that this Court has the authority to hear and determine the matter and to issue a final order.[2]

---

[1] Case No. 23–41421, ECF No. 14.

[2] All subsequent references to Code sections will be to title 11, U.S. Code, unless otherwise noted.

## Findings of Fact

### *Introduction*

In affirming the Court's previous order imposing a 180-day refiling bar in Ms. Steiner's eighth bankruptcy case, the Eighth Circuit Bankruptcy Appellate Panel (B.A.P.) upheld the Bankruptcy Court's factual finding that the Steiners' respective bankruptcy filings "were part of a long-running scheme to manipulate and abuse the Bankruptcy Code and the bankruptcy system to the extreme detriment of their creditors." The B.A.P. agreed with the Bankruptcy Court that such actions constituted egregious conduct and bad faith supporting the refiling bar.[3]

Unfortunately, the B.A.P.'s opinion only covered the background through 2019, and only detailed the history in brief. To fully understand the breadth of the Steiners' scheme, their abuse of the bankruptcy system, as well as the harm they have wrought upon their creditors, the Court must set forth the extensive factual and procedural history, starting at the beginning.

In doing so, the Court at the threshold will take judicial notice pursuant to Fed. R. Evid. 201(b) of the filings and dismissals of the Steiners' bankruptcy cases (the cases being those of Ms. Steiner, except where noted):

1) **10-40684-13**: filed Feb. 22, 2010, and dismissed Apr. 12, 2011, for failure to comply with the Court's order to cure a payment default by a time certain

2) **11-43031-13**: filed June 28, 2011, and dismissed Nov. 22, 2011, for failure to commence making plan payments

3) **12-40434-13**: filed Feb. 8, 2012, and dismissed Mar. 9, 2013, for failure to comply with the Court's order to cure a payment default by a time certain

4) **13-42210-13**: filed June 13, 2013, and dismissed Sept. 24, 2013, for failure to commence making plan payments

5) **13-21331-13**: (Neil Steiner): filed Oct. 2, 2013, and dismissed Mar. 20, 2014, for failure to timely file a confirmable plan after the Court denied the motion to extend the time to file a plan[4]

6) **16-40849-13**: filed Apr. 4, 2016, and dismissed Mar. 3, 2017, for failure to comply with the Court's order to cure a payment default by a time certain

---

[3] *In re Steiner*, 613 B.R. 176, 179 (B.A.P. 8th Cir. 2020).
[4] Note that this case was filed in the Central Division, resulting in the assignment of a judge who had not previously been assigned to the earlier cases, whereas all the other cases were filed in the Division corresponding to the county in which the Steiners reside, as required by L.R. 1073-1.

7) **17-41226-13**: filed May 3, 2017, and dismissed June 22, 2017, for abuse with a **180-day bar** to refiling

8) **18-42809-13**: filed on Oct. 30, 2018, and dismissed June 4, 2019, for failure to comply with the Court's order to cure a payment default by a time certain

9) **19-42111-13**: filed on Aug. 16, 2019, and dismissed Aug. 30, 2019, for abuse with a **180-day bar** to refiling

10) **19-42178-13**: (Neil Steiner): filed Aug. 22, 2019, and dismissed Aug. 30, 2019, for abuse with a **180-day bar** to refiling

11) **19-42249-7**: joint filing with Neil Steiner Aug. 29, 2019, and dismissed as void on Aug. 30, 2019, as violating the stays of Case Nos. 19-42111-13 and 19-42178-13

12) **20-41952-13**: filed Nov. 13, 2020, and dismissed Dec. 19, 2021, for abuse with a **one-year bar** to refiling

13) **23-41255-13**: filed Sept. 11, 2013, and dismissed Sept. 26, 2023, for failure to take credit counseling course

14) This case, **23-41421-13**: filed Oct. 11, 2023.

More details about these cases will be discussed below.

In addition, the Court takes judicial notice of the orders and the applicable findings of fact and conclusions of law in the bankruptcy cases listed above in which the Court imposed refiling bars. The Court also incorporates by reference its rulings and statements as well as the statements of Ms. Steiner and counsel for the Chapter 13 Trustee and objecting creditor in this case from the status hearings held on Dec. 19, 2023; Jan. 31, Feb. 12, May 1, June 5, Aug.14, Oct. 23, and Dec. 18, 2024, in addition to an evidentiary hearing conducted on the UST's motion on Mar. 6, 2024.

## I.   Part One: History and Details of "the Scheme" From the Previous Cases

Before addressing the Court's grounds for finding abuse in this, the most recent case, the Court will review the history of the previous cases. The history of abuse in this case will be addressed in Part Two.

When Ms. Steiner filed her first bankruptcy case in 2010, she and her husband owned three Missouri properties: a lake home at 87 Green Turtle in Tan-Tar-A Estates in Osage Beach and two homes in Blue Springs (a residence on NW 36th Street and a rental property on SW 10th Street).[5]

---

[5] This property is now claimed as the Steiners' homestead. It should also be noted that in some of Ms. Steiner's cases, she scheduled the address as "S. 10th." The Court does not know the basis for the discrepancy.

Her successive bankruptcy cases were filed on the eve of foreclosure or eviction after foreclosure and generally after having lost in state court or on appeal in their numerous state court lawsuits with their creditors. The bankruptcy cases were marked by repeated failures and problems: the filing of inaccurate and incomplete schedules; the failure to pay filing fees in four cases; the failure to list all previous bankruptcy filings on the petitions; multiple misrepresentations to the Court; failures to make plan payments; failures to obtain confirmation of plans; the assertion of frivolous arguments against the Chapter 13 Trustee and creditors; and attempts to relitigate issues previously decided either by the state court or the Bankruptcy Court, among other issues.[6] Ms. Steiner achieved confirmation of a plan in only two of her bankruptcy cases: her first case filed in 2010 and her third case filed in 2012. In neither of those cases did she complete the confirmed plans or receive a discharge.

The Steiners' efforts to thwart their creditors' attempts to foreclose or evict were egregious in the extreme and, with respect to each of the three properties, followed a similar pattern, as described below.

**A.** ***Bankruptcy Case History with Respect to the 87 Green Turtle Lake Home Property and the Steiners' Efforts to Thwart the Collection Efforts of Creditors Tan-Tar-A Estates, L.L.C. and Central Bank of the Lake of the Ozarks***

**1) 2010 Bankruptcy Case**

The Steiners rented the land for the 87 Green Turtle lake home property from Tan-Tar-A Estates, L.L.C. pursuant to a long-term ground lease and financed the purchase of the home built on the land through Central Bank of the Lake of the Ozarks.

Tan-Tar-A sued the Steiners in Camden County Associate Circuit Court for past due rent in May 2007 and later obtained a judgment against them for $15,000 in December 2009.[7] Ms. Steiner filed her first chapter 13 bankruptcy case – with benefit of counsel – a little over two months later, in February 2010.[8] Neither Tan-Tar-A nor Central Bank objected to the plan as

---

[6] This is by no means a complete list of the problematic issues in each bankruptcy filing. This Court has endeavored only to address what it perceives to be the most serious problems and those most emblematic of the pattern of abuse.

[7] *Tan-Tar-A Estates, LLC v. Neil & Deborah Steiner*, Camden Co. Associate Circuit Case No. 07CM-AC00247-01. There also appears to be an earlier case in 2003 but only the history of the 2007 case was ever presented to this Court. This case and all subsequent state court cases referenced in this opinion can be found in Missouri's casenet database https://www.courts.mo.gov/cnet/welcome.do using the litigant name search function. The Court takes judicial notice of those state court cases as relevant to the history of abuse demonstrated in timing of the filing of the bankruptcy cases.

[8] Case No. 10-40684, filed Feb. 22, 2010, the Hon. Jerry W. Venters (ret.), presiding.

amended and the plan was confirmed.[9] At the time of her bankruptcy filing, Ms. Steiner valued the lake home at $50,000[10]; Central Bank's mortgage balance against the home as of the date of filing was $51,222.63.[11] As was true in most of the following cases, most of the income Ms. Steiner projected to fund the plan derived from self-employment.[12]

Ms. Steiners' confirmed chapter 13 plan provided for plan payments of $2,667 per month and for assumption of the Tan-Tar-A lease and payment of the $38,873.85 owed for past due rent and related charges.[13] The plan also proposed to cure the mortgage arrears of $6,242.60 to Central Bank and to maintain the current monthly mortgage payments on 87 Green Turtle of $658.90 per month.[14]

The first case did not run smoothly, however. The Court denied the Chapter 13 Trustee's motion to dismiss for Ms. Steiner's remittance of multiple returned checks on the condition that she make all future plan payments by certified funds.[15] The Court denied a subsequent motion to dismiss for default on the condition that she pay a lump sum of $6,000 by a date certain, resume regular monthly plan payments, and pay an additional $1,000 per month until current.[16] Ms. Steiner failed to comply with the conditions and the Court dismissed the case in April 2011.[17] At the time of dismissal, she was $16,969 in default of plan payments.[18] The Trustee's final report showed that during the 18 months the case was pending, Ms. Steiner had paid in only $8,700 in plan payments, of which Central Bank received $3,651.79 in principal and Tan-Tar-A nothing.[19]

### 2) 2011 Bankruptcy Case

Ms. Steiner filed her second bankruptcy case in 2011 within a year of dismissal of the first case and with a different lawyer.[20] She represented in her affidavit in support of her motion to extend the stay that she and her husband were projecting higher income from self-employment and

---

[9] Case No. 10-40684, ECF No. 42.
[10] Case No. 10-40684, ECF No. 1 (Schedule A, p. 10).
[11] Case No. 10-40684, POC 10-2.
[12] Case No. 10-40684, ECF No. 1 (Schedule I).
[13] Case No. 10-40684, ECF No. 32 (amended plan); POC 11-3.
[14] Case No. 10-40684, ECF No. 2 (original plan); POC 10-2.
[15] Case No. 10-40684, ECF No. 65.
[16] Case No. 10-40684, ECF No. 79.
[17] Case No. 10-40684, ECF No. 81.
[18] Case No. 10-40684, ECF 80.
[19] Case No. 10-40684, ECF 91.
[20] Case No. 11-43031, filed June 28, 2011, the Hon. Arthur B. Federman (ret.), presiding.

a part-time teaching job such that she should be able to successfully make the plan payments.[21] No creditor objected, and the Court granted the motion.[22] Ms. Steiner again proposed a plan, paying $3,473 per month, to assume the Tan-Tar-A lease and to cure the arrears to Central Bank and maintain the ongoing mortgage payments through the plan.[23]

Tan-Tar-A filed two claims for $38,826.80 and $8,120.15.[24] Central Bank filed a claim showing the mortgage arrears had more than doubled from the first case to $13,094.40, against an increased principal balance owed of now $55,712.26; Ms. Steiner's value of the lake home had decreased from the previous case to only $40,000.[25] Before the plan could be confirmed over the objection of another creditor (discussed below), the case was dismissed for Ms. Steiner's failure to commence payments.[26] According to the Trustee's final report, Ms. Steiner paid in $2,100 during the six months the case was pending, with Central Bank receiving only $1,156.61 in principal and Tan-Tar-A receiving no distributions.[27]

### 3)  2012 Bankruptcy Case

Ms. Steiner found another lawyer to file her third bankruptcy case in 2012, within a year of dismissal of both previous cases.[28] She valued the joint interest in 87 Green Turtle at $53,500.[29] Central Bank, however, promptly filed a request for a so-called "comfort order" pursuant to § 362(c)(4)(A) that no stay was in effect, which the Court likewise promptly entered.[30] In Ms. Steiner's motion to extend [impose] the stay, she represented under oath that she had been underemployed in the previous case but now had a second job, higher income, and more stable employment.[31] Plus, she stated, her home mortgage had now been modified, resulting in a lower plan payment that she could afford, and she was now proposing a 100% plan.[32] Tan-Tara-A

---

[21] Case No. 11-43031, ECF No. 9. *See* § 362(c)(3) (stay expires after 30 days if not extended if a case has been dismissed within the previous year).

[22] Case No. 11-43031, ECF No. 20.

[23] Case No. 11-43031, ECF No. 2.

[24] Case No. 11-43031, POC 13-1, 14-1.

[25] Case No. 11-43031, ECF No. 1 (Schedule A, p. 11).

[26] Case No. 11-43031, ECF No. 52.

[27] Case No. 11-43021, ECF No. 56.

[28] Case No. 12-40434, filed Feb. 8, 2012, the Hon. Arthur B. Federman (ret.), presiding.

[29] Case No. 12-40434, ECF No. 1 (Schedule A, p. 9; Schedule C, p. 13).

[30] Case No. 12-40434, ECF. No. 17, 18. *See* § 362(c)(4) (no stay goes into effect if two or more cases were dismissed within the previous year).

[31] Although Ms. Steiner projected higher self-employment income for her household, her income from the unknown part-time job was actually less; $825 in the previous case and $500 in the 2012 case. Case No. 12-40434, ECF No. 1 (Schedule I).

[32] Case No. 12-40434, ECF No. 11.

objected to the motion, arguing that nothing about Ms. Steiner's financial situation appeared to have changed to show that she could afford to make the plan payments this time.[33] After a hearing, the Bankruptcy Court overruled the objection.[34]

Ms. Steiner's first plan proposed a payment of $1,980 per month, and the cure of an estimated $14,657 in mortgage arrears to Central Bank with maintenance of the monthly mortgage payment of $665.[35] Ms. Steiner's plan underestimated the mortgage arrears, however, which Central Bank's proof of claim showed had increased three-fold from 2010 to $18,312.65 against a principal amount due of $57,352.16.[36] Ms. Steiner filed two more plans successively increasing the proposed payment by the third plan to $2,145 per month.[37] With respect to the Tan-Tara-A lease, the plan proposed nonstandard treatment with payments to be made outside the plan.[38] Neither the Bank nor Tan-Tar-A objected to the plan nor to any of the subsequent amended plans, although Tan-Tar-A filed claims for rent arrears and related charges totaling $59,304.72.[39]

Four months after Ms. Steiner filed bankruptcy, the Court dismissed the case for Ms. Steiner's failure to commence payments.[40] In her motion to reinstate the case after dismissal, Ms. Steiner's lawyer alleged that Ms. Steiner "has represented to counsel that she mailed her June plan payment of $2,145 on June 11, 2012" and that "[p]rior failures to make her plan payments were the result of making the checks and money orders payable to the wrong payee, however [sic] that issue has been resolved and continued payments are expected."[41]

After the Court granted Ms. Steiner's motion to reinstate the case, Ms. Steiner filed an amended plan increasing the payment to $2,210 as a 100% plan,[42] which the Court ultimately confirmed.[43] Within four months, however, the Trustee had filed another motion to dismiss for failure to comply with § 1322(d) and default; the Trustee alleged that Ms. Steiner was delinquent $6,050 and the plan was running 81 months.[44] Ms. Steiner responded with a fourth amended plan

---

[33] Case No. 12-40434, ECF No. 20.
[34] Case No. 12-40434, ECF No. 22. The record does not include the Court's reasoning for overruling the objection.
[35] Case No. 12-40434, ECF No. 2.
[36] Case No. 12-40434, POC 7-1.
[37] Case No. 12-40434, ECF Nos. 32, 52.
[38] Case No. 12-40434, ECF No. 2.
[39] Case No. 12-40434, POC 8-1, 9-1.
[40] Case No. 12-40434, ECF No. 65. Ms. Steiner's lawyer had also failed to appear at the hearing.
[41] Case No. 12-40434, ECF No. 68.
[42] Case No. 12-40434, ECF No. 75.
[43] Case No. 12-40434, ECF No. 91.
[44] Case No. 12-40434, ECF No. 101.

proposing to increase the plan payment to $2,700 per month.[45] The Trustee's motion to deny confirmation of that plan pointed out that Ms. Steiner was now delinquent $9,060; she had not made a full plan payment in the ten months her bankruptcy case had been pending; and she had made only four payments of the ten plan payments that had come due.[46] Ms. Steiner's response was that her check to the Chapter 13 Trustee for $6,500 had been lost in the mail and her banking institution had told her she had to wait 30 days before she could replace it. She also represented that she had mailed her December payment.[47] The Court denied confirmation of the plan and also denied the motion to dismiss on the condition Ms. Steiner bring her plan payments current by a date certain.[48]

Unsurprisingly, Ms. Steiner did not comply with the Court's order to cure the default, and the Court dismissed the case.[49] She was delinquent $10,790 at the time of dismissal.[50] The Trustee's final report showed that Ms. Steiner paid $12,900 during the 17 months the case was pending. Of that amount, Central Bank received $7,023.58 in principal payments and Tan-Tar-A received none.[51]

### 4) 2013 Bankruptcy Cases & State Court Rent & Possession Case

By the time Ms. Steiner filed her fourth, emergency chapter 13 case in June of 2013 (the last bankruptcy case Ms. Steiner filed with the benefit of a lawyer), the amounts the Steiners owed to Tan-Tar-A and the Bank had again increased substantially (although the value of the lake home, now described as a "cabin" in the schedules, had decreased again to only $40,000).[52] Ms. Steiner's plan proposed payments of only $1,360 per month towards an estimated mortgage arrears to Central Bank alone of $26,469.34.[53] Her projected household income was solely from self-employment.[54] Ms. Steiner's affidavit in support of her motion to extend the stay blamed her creditor for dismissal of the previous case. Specifically, she stated under oath that she had filed the

---

[45] Case No. 12-40434. ECF No. 106.
[46] Case No. 12-40434, ECF No. 110.
[47] Case No. 12-40434, ECF No. 113.
[48] Case No. 12-40434, ECF No. 120, 121.
[49] Case No. 12-40434, ECF No. 125.
[50] Case No. 12-40434, ECF No. 124.
[51] Case No. 12-40434, ECF No. 135.
[52] Case No. 13-42210, filed June 13, 2013, the Hon. Arthur B. Federman (ret.), presiding. *See* ECF No. 13 (Schedule A, p. 2). Neither the Bank nor Tan-Tar-A filed proofs of claim, but the Bank's subsequently filed motion for relief from stay [ECF No. 18] alleged a payoff balance due of $58,944.83.
[53] Case No. 13-42210, ECF No. 16.
[54] Case No. 13-42210, ECF. No. 13 (Schedule I).

previous case to stop a foreclosure but "the creditor had advised [her] that if [she] dismissed the case they would work with [her]" but "[t]he creditor did not follow through with a modification."[55] The Bankruptcy Court granted the motion to extend the stay, except as to both Tan-Tar-A and Central Bank, finding that the bankruptcy filing was not in good faith as to those creditors pursuant to § 362(c)(3).[56]

In the meantime, Central Bank filed a motion to lift the stay to commence foreclosure on 87 Green Turtle, alleging it had received no ongoing payments in more than three years (or since October 2010).[57] Ms. Steiner objected to the motion for relief, alleging that she had already mailed a plan payment to the Chapter 13 Trustee.[58] Her representation of payment was belied by the Trustee's response to the motion, denying that he had received any payments from Ms. Steiner.[59] The Court granted Central Bank's motion and lifted the stay on 87 Green Turtle for the Bank to foreclose.[60] The Court subsequently dismissed Ms. Steiner's case for failure to commence plan payments.[61] In the three months Ms. Steiner's case was pending, she paid in only $1,860, none of which was distributed to creditors.[62]

Two short months after the Court lifted the stay on the 87 Green Turtle property in Ms. Steiner's fourth bankruptcy case, Mr. Steiner filed his own chapter 13 bankruptcy case in October 2013.[63] Mr. Steiner's lawyer withdrew and the Court dismissed Mr. Steiner's case after Central Bank showed that Mr. Steiner had fabricated a letter purporting to be from Tan-Tar-A's lawyer allegedly describing payments to Tan-Tar-A that he had indeed not made.[64] In the nine months Mr. Steiner's case was pending, he paid in only $3,600, of which $789.22 was refunded to him, and $2,642.13 was paid to Central Bank.[65]

---

[55] Case No. 13-42210, ECF No. 29-1. It is unclear in the Affidavit which creditor Ms. Steiner was referring to, but the body of the Motion makes clear that it was Central Bank who Ms. Steiner was alleging failed to offer a loan modification.
[56] Case No. 13-42210, ECF No. 60. *See also* Objection of Tan-Tar-A Estates to Debtor's Motion to Extend Stay (ECF No. 43).
[57] Case No. 13-42210, ECF No. 18.
[58] Case No. 13-42210, ECF No. 28.
[59] Case No. 13-42210, ECF No. 25.
[60] Case No. 13-42210, ECF No. 58.
[61] Case No. 13-42210, ECF No. 68.
[62] Case No. 13-42210, ECF No. 72.
[63] Case No. 13-21331.
[64] Case No. 13-21331.
[65] Case No. 13-21331, ECF No. 77.

After the Bankruptcy Court dismissed both 2013 bankruptcy cases, Central Bank scheduled a foreclosure sale for the house at 87 Green Turtle for May 12, 2014. The Steiners in turn filed complaints against Central Bank and its President with various governmental agencies and elected officials, including at least one U.S. Senator, the Missouri Division of Finance, the Missouri Attorney General, and the Federal Reserve. Central Bank later agreed to cancel the foreclosure sale and release its deed of trust in exchange for the Steiners' agreement to pay certain amounts to the Bank and to grant a release.[66]

In the meantime, Tan-Tar-A had sued the Steiners in Camden County Associate Circuit Court for rent and possession of the land (the "Rent & Possession Case") in December 2014.[67] The Steiners, acting pro se, filed various counterclaims. After protracted litigation, Tan-Tar-A obtained judgment against the Steiners for $63,605.26 in past due rent and other charges in January 2015. After further protracted litigation, including failed appeals and multiple motions to vacate the judgment by the Steiners, the Camden County Sheriff in March 2016 executed a writ of execution to restore possession of the land to Tan-Tar-A, terminating the lease by operation of Missouri law. Shortly before a hearing to shut off the Steiners' utilities and the day the Missouri Supreme Court issued a mandate dismissing the Steiners' appeal in the Rent & Possession case,[68] Ms. Steiner filed a fifth, emergency, pro se chapter 13 case.

### 5) 2016 Bankruptcy Case & State Court Declaratory Judgment Case

Ms. Steiner's fifth bankruptcy filing proved to be a "battle royal" between Tan-Tar-A and Ms. Steiner.[69] The crux of the dispute centered on Ms. Steiner's belief that she still owned the house and land at 87 Green Turtle subject to no other creditors' interests, and particularly not to Tan-Tar-A's. In an apparent effort to relitigate the Rent & Possession case in bankruptcy court, Ms. Steiner:

- Scheduled 87 Green Turtle as owned free and clear of any interests[70]
- Valued 87 Green Turtle at $275,000 (compared to the $40,000 to $50,000 value in the previous cases)[71]

---

[66] Case No. 16-40849, ECF No. 136 (Exhibit to Bank's Motion to Quash Subpoena, discussed below).
[67] *Tan-Tar-A Estates LLC v. Neil B. Steiner, et al,* Camden County Associate Circuit Court, Case No 14CM-AC00756.
[68] *Tan-Tar-A Estates, L.L.C. v. Neil B. Steiner and Deborah G. Steiner*, Missouri Court of Appeals, Southern District, Case No. SD34182-2 (also attached as Exhibit D in Case No. 16-40849, ECF No. 94-4).
[69] Case No. 16-40849, filed April 4, 2016, the Hon. Cynthia A. Norton, presiding.
[70] Case No. 16-40849, ECF No. 22 (Schedule D, p. 13).
[71] Case No. 16-40849, ECF No. 22 (Schedule A, p. 2).

- Scheduled Tan-Tar-A as an unsecured creditor owed only $35,000 (notwithstanding that the state court in the Rent & Possession Case had entered judgment against her for more than $60,000)[72]

- Filed seven plans with various treatments, including treating Tan-Tar-A as a secured creditor with $35,000 of arrears and ongoing payments of $700 per month to be cured and maintained; a secured creditor with $35,000 of arrears and ongoing payments of $584 per month to be cured and maintained; a secured creditor with no ongoing payments or arrears due; the holder of an unexpired lease to be assumed and paid directly with $64,000 in judgment arrears; the holder of an unexpired lease to be assumed and paid directly with no arrears; the holder of an unexpired lease to be rejected; and as entitled to no treatment whatsoever, including as an unsecured creditor[73]

- Objected to Tan-Tar-A's filed proof of claim of $70,577.43 on the grounds that "Debtor never had a lease" and "Debtor had a scammed lease"[74]

- Asserted baselessly that Tan-Tar-A's counsel had offered to accept $1,000 to $10,000 to release Tan-Tar-A's claim[75]

- Filed a motion for contempt and sanctions against Tan-Tar-A based on frivolous allegations, including that the Camden County Sheriff had never served her with the writ in the Rent & Possession case and that Tan-Tar-A had caused the Sheriff to dispose of her personal property, among other allegations[76]

- After the Court found the Sheriff had not disposed of the personal property but that Tan-Tar-A had secured the property, filed a second motion for "Damages of Real Property and Personal Property" against Tan-Tar-A[77]

---

[72] Case No. 16-40849, ECF No. 22 (Schedule E/F, p. 15).
[73] Case No. 16-40849, ECF No. 34 ($750/mo; pay through plan as long term real estate mortgage with ongoing monthly payments of $700/month and "cure" of $35,000 in arrears); No. 60 (plan payment of $1,176/mo; pay through plan as long term real estate mortgage except monthly ongoing payments of $584/mo; ) No. 86 (plan payment of $747.50/month; acceptance as an unexpired lease to be paid directly); No. 144 (plan payment of $1,100/mo; rejection); No. 221 (plan payment of $1,800/mo; acceptance as an unexpired lease to be directly based on $64,000 judgment); No. 251 (plan payment of $1,800/mo; no treatment of unsecured creditors specified); and No. 254 (plan payment of $1,100/mo, long term real estate mortgage with no ongoing payments and $0 arrears). Tan-Tar-A was compelled to file five objections to confirmation: ECF Nos. 37, 68, 94, 233, and 265.
[74] Case No. 16-40849, ECF No. 111.
[75] Case No. 16-40849, ECF No. 73. *See* Tan-Tar-A Response, ECF No. 77.
[76] Case No. 16-40849, ECF No. 45. The Court after a hearing denied the motion. ECF No. 147.
[77] Case No. 16-40849, ECF Nos. 45, 207. *See* Response of Tan-Tar-A, ECF No. 218.

- Improperly attempted to subpoena third party witnesses (such as deputies in the Camden County Sheriff's office, the Mayor of Osage Beach, and Central Bank's president) and, after the Court quashed those subpoenas, attempted to serve improper subpoenas a second time.[78]

In the midst of these other disputes, the Court appointed a mediator at Ms. Steiner's request in what proved to be a failed attempt to see if the parties could reach a resolution.[79] The Court also held two evidentiary hearings in August 2016[80] and December 2016 with respect to Ms. Steiner's motions for damages, her objection to claim, an objection to confirmation, and Tan-Tar-A's motions for relief. The Court in connection with both hearings ruled that the final judgment in the Rent & Possession Case was *res judicata* as to whether the Steiners had a valid lease with Tan-Tar-A; whether the Steiners had been in default of the lease; the amount of the arrears owed; and whether the lease terminated prepetition.[81]

Whether the house was an "improvement" that became the property of Tan-Tar-A under the lease had not been litigated in the Rent & Possession Case and was not, however, *res judicata*. The Court therefore lifted the stay for the limited purpose of allowing Tan-Tar-A to file a petition in state court to determine that issue and abstained from determining Ms. Steiner's motion for damages in connection with the house and personal property. The Court also held Tan-Tar-A's fifth objection to confirmation of Ms. Steiner's seventh proposed plan in abeyance, pending ruling in the state court (among other rulings).[82] Tan-Tar-A promptly filed a petition in Camden County Circuit Court seeking a declaratory judgment that it owned the house at 87 Green Turtle under the terms of the lease and applicable Missouri law (the "Declaratory Judgment Case").[83]

The Bankruptcy Court never reached the confirmation issues it had held in abeyance since, in the meantime, Ms. Steiner had again defaulted in her plan payments.[84] Ms. Steiner's response to the motion to dismiss filed with the Court alleged she had mailed three separate checks to the Trustee totaling $2,350.[85] At the hearing, Ms. Steiner stated on the record that her response filed

---

[78] Case No. 16-40849, ECF Nos. 128, 129,131, 135, 136, 137, 138, 194, 210, 223, 229, 232, and 238.
[79] Case No. 16-40849, ECF No. 174. The Hon. Arthur B. Federman (now retired) appointed; after his resignation due to a scheduling conflict, the Court appointed the now Hon. Jill A. Morris. ECF Nos. 174, 175, 177, and 184.
[80] Case No. 16-40849, ECF No. 146.
[81] Case No. 16-40849, ECF No. 243.
[82] Case No. 16-40849, ECF No. 243.
[83] *Tan-Tar-A Estates, LLC v. Neil B. Steiner, et al*, Camden County Circuit Court Case No. 16CM-CC00247.
[84] Case No. 16-40849, ECF No. 152.
[85] Case No. 16-40849, ECF No. 167.

with the Court was incorrect and that she had actually mailed two checks totaling $2,400 (towards a delinquency of $2,373.50) and blamed her bank and the mail. The Trustee said he had no record of receiving any of those payments. The Court directed Ms. Steiner to check with her bank and mail replacement checks and continued the motion to dismiss on the condition that she make a payment before the next hearing.[86] The Court later entered an order denying the motion to dismiss on the condition that Ms. Steiner be current by a date certain.[87] Ms. Steiner failed to comply with that order, however, and in March 2017 the Court dismissed the case.[88] The Trustee's Request for Dismissal Order stated that the "personal check posted on February 27, 2017 was returned for insufficient funds."[89]

Ms. Steiner paid in a total of $4,793.73 (after receiving a refund) during the 19 months this case was pending.[90] Tan-Tar-A received no distribution.

### 6)   2017 Bankruptcy Case & State Court Litigation

Two months later, in early May 2017, Ms. Steiner filed another emergency chapter 13 case, her sixth.[91] At the same time, the Steiners had filed a motion in the Rent & Possession Case to set aside Tan-Tar-A's 2015 final judgment, which the state court later denied. More importantly, the bankruptcy filing was filed shortly after Tan-Tar-A had filed a motion for summary judgment that it owned the house in the Declaratory Judgment Case. Ms. Steiner did not file a mailing matrix with the bankruptcy petition and initially neither scheduled Tan-Tar-A as a creditor nor treated Tan-Tar-A in the proposed plan (paying $400 per month),[92] although she included 87 Green Turtle (valued at $275,000) as her property on the Schedule A/B and later filed an Amended Schedule G adding Tan-Tar-A as the holder of an unexpired lease.[93] She also filed a Form 101A "Initial Statement About Eviction Judgment" listing Tan-Tar-A as the landlord, but added in handwriting: "land but I own it."[94]

---

[86] Case No. 16-40849, ECF No. 182.
[87] Case No. 16-40849, ECF No. 239.
[88] Case No. 16-40849, ECF No. 288.
[89] Case No. 16-40849, ECF No. 287.
[90] Case No. 16-40849, ECF No. 303.
[91] Case No. 17-41226, filed May 3, 2017, the Hon. Cynthia A. Norton, presiding.
[92] Case No. 17-41226, ECF No. 20.
[93] Case No. 17-41226, ECF No. 21 (Schedule A/B, p. 2); ECF No. 29 (Schedule G).
[94] Case No. 17-41226, ECF No. 24.

Ms. Steiner did not add Tan-Tar-A to the mailing matrix for notice purposes until more than a month later.[95] She also filed an untimely motion to extend the stay, alleging "[t]here has been a substantial change in the financial affairs of the debtor since the dismissal of the last case, and the debtor believes this case will result in a Chapter 13 confirmed plan."[96] The Court denied the motion[97] and Ms. Steiner filed a second motion to extend the stay on the grounds that somehow the Trustee's continuance of the 341 meeting meant she was entitled to another 30 days to file a motion to extend stay, stating: "This gives creditors a 30 day notice."[98] The Court again denied the motion.[99]

In the meantime, the Chapter 13 Trustee filed a motion to dismiss the case with prejudice., After Ms. Steiner failed to respond, the Court granted the motion on June 22, 2017, issuing a bar on refiling for 180 days (or until December 18, 2017).[100] The Trustee's final report showed that in the two months the case had been pending, Ms. Steiner failed to make any plan payments.[101]

Undeterred, Ms. Steiner filed a motion to reinstate the bankruptcy case a month later, alleging that she was seeking new counsel and was going to start a new job.[102] The Trustee objected, pointing out that Ms. Steiner had had ample time to find counsel and had not provided proof of the alleged new job.[103] He also pointed to the failure to make payments as other evidence of bad faith. The Court agreed with the Trustee and denied the motion.[104] Ms. Steiner's motion to reinstate the bankruptcy case was filed shortly after the Steiners suffered losses in both pending state court cases: in the Rent & Possession Case, the state court had (again) denied the Steiners' motion to set aside the judgment and in the Declaratory Judgment Case, the court had ruled in favor of Tan-Tar-A that the Steiners had no interest in the 87 Green Turtle land or in the house.

---

[95] Case No. 17-41226, ECF No. 65. Note that Ms. Steiner also failed to schedule many of the creditors listed in the previous bankruptcy cases.
[96] Case No. 17-41226, ECF No. 45.
[97] Case No. 17-41226, ECF No. 46.
[98] Case No. 17-41226, ECF No. 53.
[99] Case No. 17-41226, ECF No. 54.
[100] Case No. 17-41226, ECF No. 70.
[101] Case No. 17-41226, ECF No. 76.
[102] Case No. 17-41226, ECF No. 82.
[103] Case No. 17-41226, ECF No. 83. Note that in several of the previous cases Ms. Steiner had stated she was going to get a new job.
[104] Case No. 17-41226, ECF No. 84.

### 7)  2018 Bankruptcy Case

The Steiners continued litigating against Tan-Tar-A in both state court cases throughout the rest of 2017 and into 2018 with the filing of various postjudgment motions and appeals. Then, in October 2018, Ms. Steiner filed her seventh pro se emergency chapter 13 case.[105] Although this bankruptcy filing appears to have been precipitated by the foreclosure actions of a different creditor with respect to a different property (discussed below), Ms. Steiner continued her attempts to relitigate with Tan-Tar-A, by including in her plan avoidance of Tan-Tar-A's "lien" against 87 Green Turtle[106]; filing an "Initial Statement About an Eviction Judgment" against Tan-Tar-A[107]; and by filing various motions, including a "Motion to Reinstate Property of 87 Green Turtle,"[108] and a "Motion to Deny Writ on 87 Green Turtle."[109] After the Court held a hearing and denied these motions as baseless,[110] Ms. Steiner filed two more motions arguing she never had a lease with Tan-Tar-A, was never served by the Sheriff, and seeking damages: the nonsensical "Motion to request a Hearing be set on Sale of Property 87 Green Turtle"[111] and "Motion to Deny Sale f [sic] Property 87 Green Turtle Tan Tar A [sic] LLC."[112] The Court likewise denied these motions as baseless.[113]

The Court dismissed the bankruptcy case in June 2019 after Ms. Steiner failed to comply with the terms of an order denying the Trustee's motion to dismiss for default on the condition she become current on plan payments within a time certain.[114] The Trustee's final report showed that the bankruptcy case had been pending for nine months and that Ms. Steiner had only paid in $1600, all of which was refunded to her.[115]

### 8)  The Three 2019 Bankruptcy Cases & Subsequent State Court Litigation

Two months later, in August 2019, Ms. Steiner filed her eighth, pro se, emergency chapter 13 bankruptcy case, also apparently precipitated by a creditor other than Tan-Tar-A.[116] Tan-Tar-A

---

[105] Case No. 18-42809, filed Oct. 30, 2018, the Hon. Cynthia A. Norton presiding.
[106] Case No. 18-42809, ECF No. 6.
[107] Case No. 18-42809, ECF No. 5.
[108] Case No 18-42809, ECF No. 39.
[109] Case No. 18-42809, ECF No. 40.
[110] Case No. 18-42809, ECF No. 72.
[111] Case No. 18-42809, ECF No. 77.
[112] Case No. 18-42809, ECF No. 109.
[113] Case No. 18-42809, ECF No. 138.
[114] Case No. 18-42809, ECF No. 199.
[115] Case No. 18-42809, ECF No. 205.
[116] Case No. 19-42111, filed Aug. 16, 2019, the Hon. Cynthia A. Norton, presiding.

was not scheduled, treated in the plan, or listed on the mailing matrix attached to the petition. Ms. Steiner's bankruptcy filing was followed by the separate chapter 13 filing of Mr. Steiner a week later,[117] and then the joint chapter 7 case a week after that.[118]

On the motion of a creditor with respect to one of the other properties, the Court in a hearing in all three of the Steiners' pending cases found the chapter 7 case void as in violation of the stays in the pending chapter 13 cases, and dismissed both chapter 13 cases with prejudice, with another 180-day filing bar.[119] The transcript from that hearing includes this extraordinary statement from the Bankruptcy Judge:

> In my nearly 30 years combined in the bankruptcy practice and on the bench, I believe the Steiners' behavior and tactics constitute some of the most extreme abuse of the bankruptcy system that I've experienced. Not only have the Steiners been found to have filed prior cases in bad faith and already barred from filing subsequent cases for 180 days, so they know and understand the possible sanction of a bar to refiling, they have also been accused of fraudulent conduct. The Steiners' current Chapter 13 bankruptcy cases, Deborah's eighth Chapter 13 case and Neil's second Chapter 13 bankruptcy case are just the latest episode in this long-running saga that has gone on too long.[120]

The Steiners appealed the dismissals and bars. The Eighth Circuit B.A.P. affirmed. More about the 2019 cases will be discussed below in connection with the other properties.

After losing in bankruptcy court on her attempts to relitigate with Tan-Tar-A, the Steiners filed two more state court cases in Camden County Circuit Court involving Green Turtle: *Steiner et al v. Thomas*, Case No. 19CM-CC00126 against the then-owners of the property in June 2019 and *Steiner et al v. Tan Tar A* [sic] *Estates LLC*, Case No. 20CM-CC00214 in September 2020. In both cases, the state court found that the issues had been litigated in the Rent & Possession and Declaratory Judgment Cases and dismissed both lawsuits in late summer/early fall 2021.

### 9)  2020 Bankruptcy Case

Ms. Steiner did not schedule ownership of 87 Green Turtle in her 2020 bankruptcy case, although she listed Tan-Tar-A as a secured creditor on the Schedule D holding a secured claim of

---

[117] Case No. 19-42178, filed Aug. 22, 2019, the Hon. Dennis R. Dow (ret.), presiding.
[118] Case No. 19-42249, filed Aug. 29, 2019, the Hon. Brian T. Fenimore, presiding.
[119] Case No. 19-42111, ECF No. 41.
[120] Case Nos. 19-42111, 19-42178, 19-42249, ECF No. 23, p. 23.

$200,000 against the 87 Green Turtle property, valued at $200,000.[121] Her plan likewise did not address Tan-Tar-A or the 87 Green Turtle property.[122]

Tan-Tar-A did, however, file a proof of claim on account of its January 2015 judgment from the Rent & Possession Case for $97,329.78.[123] Almost most of Ms. Steiner's attention in the 2020 bankruptcy case was directed towards the creditors on her two other properties (discussed below), Ms. Steiner still attempted to relitigate the state court judgments. She filed a "Motion for Adversary Hearing" against Tan-Tar-A, alleging that the Camden County Sheriff never served her with the writ,  and arguing she had paid for the house in full, referencing the lawsuit the Steiners filed against Tan-Tar-A earlier in 2020.[124] Tan-Tar-A's objection pointed out – appropriately – that Ms. Steiner was barred by *res judicata* from relitigating these issues and that the Bankruptcy Court otherwise lacked jurisdiction to hear her complaints about the state court process and judgment pursuant to the *Rooker-Feldman* doctrine.[125] Ms. Steiner later withdrew the motion.[126]

Ms. Steiner in the meantime objected to Tan-Tar-A's proof of claim, again on the grounds Tan-Tar-A's judgment had been paid in full.[127] Tan-Tar-A's response denied that Ms. Steiner had paid the debt.[128] Ms. Steiner's reply argued that the property was never sold, and any lien was released.[129] The Court denied Ms. Steiner's objection as moot when Tan-Tar-A filed an amended proof of claim adjusting the dollar amount of its claim.[130] Ms. Steiner then filed another objection to the amended claim, again on the grounds that the claim had been paid in full.[131] Tan-Tar-A's response pointed out that the Bankruptcy Court had already ruled in the 2016 case that *res judicata* barred relitigation of the issues.[132] After a hearing, the Court overruled Ms. Steiner's objection to the claim.[133]

---

[121] Case No. 20-41962, ECF No. 1 (Schedule D, p. 24).
[122] Case No. 20-41962, ECF No. 2. The Court is not suggesting that the plan should have addressed Tan-Tar-A, since at this point Tan-Tar-A was an unsecured creditor with a substantial judgment claim.
[123] Case No. 20-41952, POC 4-3.
[124] Case No. 20-41952, ECF No. 66.
[125] Case No. 20-41952, ECF No. 83.
[126] Case No. 20-41952, ECF No. 96.
[127] Case No. 20-41952, ECF No. 93.
[128] Case No. 20-41952, ECF No. 103.
[129] Case No. 20-41952, ECF No. 110.
[130] Case No. 20-41952, ECF No. 122.
[131] Case No. 20-41952, ECF No. 123.
[132] Case No. 20-41952, ECF No. 156.
[133] Case No. 20-41952, ECF No. 165.

Ms. Steiner filed no other motions or objections involving Tan-Tar-A before the Court dismissed her 2020 bankruptcy case for the failure to bring the plan payments current pursuant to the Court's order. As an unsecured creditor, Tan-Tar-A received no distributions.[134]

The Court will discuss Ms. Steiner's treatment of Tan-Tar-A in connection with the most current case in Part Two. Turning to the second property:

**B. *Bankruptcy Case History with Respect to NW 36th (Original Homestead Property) and The Steiners' Efforts to Thwart Creditor Chase Manhattan Mortgage and its Successors JP Morgan, Wilmington Savings, Wilmington's Servicer, Selene Finance, and Jack Murphy, Purchaser at the Foreclosure Sale***

**1) 2010 Bankruptcy Case**

In 2010, the Steiners resided in property on NW 36th Street in Blue Springs, Missouri. Ms. Steiner valued this property at $140,000 and claimed it as her exempt homestead.[135] Her plan in her 2010 bankruptcy case proposed to pay the mortgage owed to Chase Manhattan Mortgage (Chase Home Finance) in full, in the estimated amount of $19,890.[136] Chase's proof of claim proved to be more than twice that amount, however: Chase filed a total secured claim of $43,023.61 with $36,840.59 in arrears, reflecting 32 months of missed payments from July 2007.[137] Ms. Steiner objected that the escrow was improperly calculated, arguing that there should be an escrow surplus, rather than an escrow shortage, such that the claim should be for a lower amount.[138] Counsel for Chase responded that the exhibit attached to the proof of claim was calculated correctly, wryly noting that a loan with 32 missed payments could not have an escrow surplus.[139] The Bankruptcy Court denied Ms. Steiner's objection to Chase's claim.[140] Chase later transferred its claim to JP Morgan Chase.[141] As noted above, the plan in the 2010 bankruptcy case was confirmed but the case was ultimately dismissed for the failure to cure the payment default pursuant to the Court's order. The Trustee's final report shows that, of the funds Ms. Steiner paid into the plan, JP Morgan received $3,873.96 in principal and $74.53 in interest.[142]

---

[134] Case No. 20-41952, ECF No. 298.
[135] Case No. 10-40684, ECF No. 1 (Schedule A, p. 10; Schedule C, p.14).
[136] Case No. 10-40684, ECF No. 2.
[137] Case No. 10-40684, POC 5-1.
[138] Case No. 10-40684, ECF No. 27.
[139] Case No. 10-40684, ECF No. 34.
[140] Case No. 10-40684, ECF No. 41.
[141] Case No. 10-40684, ECF No. 86.
[142] Case No. 10-40684, ECF No. 91.

### 2)  2011 Bankruptcy Case

In the second bankruptcy case, filed in 2011, the plan again provided for payment in full of JP Morgan's loan, in the amount of $46,686.[143] Ms. Steiner valued the joint interest in the house at $120,000 with a mortgage balance of $46,686 and also claimed it exempt.[144] As noted above, however, the Court granted the Trustee's motion to dismiss after Ms. Steiner failed to commence payments. JP Morgan did not file a proof of claim.

### 3)  2012 Bankruptcy Case

Ms. Steiner failed to treat JP Morgan in her proposed plan in her 2012 case,[145] although she valued the house at $135,000 with a $30,000 mortgage and claimed it exempt.[146] Her amended plan, filed after the Court dismissed then reinstated the case, proposed direct payments to Chase (JP Morgan) on the grounds Ms. Steiner was current and there were no mortgage arrears.[147] JP Morgan did not object to confirmation and the Court confirmed the third amended plan.[148] Since JP Morgan did not file a claim, it did not receive any of the funds paid through the plan.

### 4)  2013 Bankruptcy Case

In her fourth bankruptcy case, Ms. Steiner valued her homes at NW 36th at $109,000.[149] Her plan stated that she was current on her home mortgage payments to JPMorgan (Chase) and that she would continue to pay the payments directly.[150] The case was dismissed for failure to commence making plan payments before the bar date had run and JPMorgan did not file a claim,[151] although JPMorgan's counsel filed an entry of appearance.[152]

### 5)  2016 Bankruptcy Case

In the 2016 case (the first pro se case), Ms. Steiner did not file her plan timely but once filed, proposed to pay JPMorgan monthly mortgage payments directly, estimating no mortgage arrears.[153] She valued her homestead at NW 36th as worth $130,000.[154] After Ms. Steiner filed

---

[143] Case No. 11-43031, ECF No. 2.
[144] Case No. 11-43031, ECF No. 1 (Schedule A, p. 11; Schedule C, p. 16; Schedule D, p. 17).
[145] Case No. 12-40434, ECF No. 2.
[146] Case No. 12-40434, ECF No. 1 (Schedule A, p. 9; Schedule C, p. 13; Schedule D, p. 14).
[147] Case No. 12-40434, ECF No. 75.
[148] Case No. 12-40434, ECF No. 91.
[149] Case No. 12-40434, ECF No. 13 (Schedule A, p. 2).
[150] Case No. 13-42210, ECF No. 16.
[151] Case No. 13-42210, ECF No. 68.
[152] Case No. 13-42210, ECF No. 11.
[153] Case No. 16-40849, ECF No. 34.
[154] Case No. 16-40849, ECF No. 22 (Schedule A, p. 1).

several amended plans proposing the same treatment, JP Morgan's successor, Wilmington Savings Fund Society, FSB[155] objected to confirmation.[156] Wilmington alleged that the loan on the NW 36th property had matured five years earlier, on April 1, 2011, and that the entire balance of $77,208.13 was now due. Ms. Steiner's response stated that she did not know who Wilmington was and that she had been working on a loan modification with Selene Finance (Wilmington's servicer).[157]

The hearing on Wilmington's objection to confirmation was held in conjunction with the Chapter 13 Trustee's pending motion to dismiss for default.[158] With respect to Wilmington's objection, Ms. Steiner insisted she was working on a loan modification, so the Court continued that objection, directing Ms. Steiner to file a motion to approve the loan modification as required by local rules.

By the next hearing on Wilmington's objection, Ms. Steiner had not filed proof of a loan modification in the form of a motion, so the Court sustained Wilmington's objection and directed Ms. Steiner to file an amended plan.[159]

Ms. Steiner's amended plan (her fifth) proposed a plan payment of $1,800 and to pay Wilmington $73,000 in arrears under the "cure and maintenance" provision of the plan, without specifying whether it be paid directly or through the plan and noting next to NW 36th "under modification."[160] The Trustee raised numerous confirmation issues, particularly with respect to the ambiguous treatment of Wilmington, and after Ms. Steiner failed to respond to the Trustee's motion, the Court denied confirmation and directed Ms. Steiner to file an amended plan.[161] Ms. Steiner's amended plan filed in response (again with a $1,800 per month payment) proposed to pay Selene Finance (Wilmington) $70,000 in arrears through the plan (again under the "cure and maintenance" provision) with no ongoing payments.[162] This plan was likewise unconfirmable[163] and Ms. Steiner filed a seventh plan, proposing to pay an ongoing payment of $745.15 per month

---

[155] D/B/A Christiana Trust, Not Individually But as Trustee for Pretium Mortgage Acquisition Trust.
[156] Case No. 16-40849, ECF No. 164.
[157] Case No. 16-40849, ECF No. 179.
[158] Case No. 16-40849, ECF Nos. 181, 182.
[159] Case No. 16-40849, ECF No. 199, 201.
[160] Case No. 16-40849, ECF No. 221.
[161] Case No. 16-40849, ECF No. 231, 248.
[162] Case No. 16-40849, ECF No. 251.
[163] Case No. 16-40849, ECF No. 261.

to Wilmington with a cure of $70,000 in arrears, but lowering the plan payment to $1,100 per month.[164]

The Trustee, Tan-Tar-A, and Wilmington objected to the plan.[165] Wilmington objected again that the loan had matured and thus it was entitled to be paid in full through the plan with interest and attorney's fees the total payoff due of $77,208.13.[166] As noted above, before the Court could hear Wilmington's objection, the Court dismissed the case for Ms. Steiner's failure to bring the plan payments current in accordance with the Court's order. Wilmington received no distributions under the plan.[167]

### 6) Case No. 17-41226

In the 2017 bankruptcy case, Ms. Steiner valued the property on NW 36th at $165,000, with the portion she owned as worth $130,000.[168] She claimed the house exempt and scheduled no debt owed against it on her Schedule D.[169] Her first plan proposed a monthly plan payment of $400 per month and proposed paying Selene Finance (Wilmington) an ongoing monthly mortgage of $784 per month "in loan modification."[170] Before the Trustee could raise any confirmation issues, Ms. Steiner filed a second plan proposing the same treatment.[171] Wilmington objected to confirmation on the grounds the loan had matured and the balance to be paid through the plan should be $64,870.45, consisting of principal of $35,199.23 plus escrow advances, fees, and charges of $29,671.22.[172] Ms. Steiner responded with a third amended plan proposing no payments with the notation "modification."[173] Before the Court could address the confirmation issues, the Court dismissed the case with a bar on refiling. Ms. Steiner paid in no funds and therefore Wilmington received no distributions.[174]

---

[164] Case No. 16-40849, ECF No. 254.
[165] Case No. 16-40849, ECF Nos. 261, 264 and 265.
[166] Case No. 16-40849, ECF No. 264. *See* § 506(b) (allowing interest and attorney fees to oversecured creditors).
[167] Case No. 16-40849, ECF No. 303. Wilmington had a motion for leave to file proof of claim out of time pending when the case was dismissed. ECF No. 273.
[168] Case No. 17-41226, ECF No. 21 (Schedule A/B, p. 21). It is unclear why Ms. Steiner believed she owned 78% of the value of the house; in other cases, she claimed 50% and sometimes 100%.
[169] Case No. 17-41226, ECF No. 21 (Schedule C, p. 11; Schedule D, p. 13).
[170] Case No. 17-41226, ECF No. 20.
[171] Case No. 17-41226, ECF No. 31.
[172] Case No. 17-41226, ECF No. 40.
[173] Case No. 17-41226, ECF No. 56.
[174] Case No. 17-41266, ECF No. 76.

### 7) **2018 Bankruptcy Case**

After the filing bar expired, Ms. Steiner commenced her 2018 bankruptcy case. In this case, she valued her homestead at NW 36th at $190,000 and her portion as worth $190,000 and claimed a $190,000 homestead exemption.[175] The Chapter 13 Trustee objected to the exemption since Missouri law limits the homestead exemption to $15,000.[176] Using the official form chapter 13 plan, instead of the Court's mandated local form plan, Ms. Steiner proposed to pay Selene Finance [Wilmington] $960 per month directly, noting "modification."[177] The Trustee raised numerous confirmation issues.[178] Ms. Steiner's amended plan filed in response proposed the same treatment to Wilmington.[179] Wilmington objected to confirmation on the grounds again that the loan had matured and was not eligible for cure and maintenance treatment.[180] The Court denied confirmation of the second plan and ordered Ms. Steiner to file another amended plan.[181] In light of that ruling, the Court denied the Wilmington objection as moot.[182]

Ms. Steiner's third plan proposed two different treatments with respect to the loan on NW 36th; under the "cure and maintenance" section, the plan proposed no payments of either ongoing mortgage payments or arrears, with the notation "waiting on modification"; elsewhere, the plan proposed to pay Selene Finance [Wilmington] in full through the plan the sum of $43,243.[183] The Chapter 13 Trustee again raised numerous issues with confirmation, including the conflicting treatments of Selene Finance [Wilmington].[184] Ms. Steiner responded by filing a fourth plan, this time proposing to pay Wilmington an ongoing payment of $410 per month, to cure arrears of $20,000, and to pay the loan in full $35,243 with no monthly payments; a notation said "waiting on modification."[185]

The Chapter 13 Trustee's motion to deny confirmation objected again to the conflicting treatments of Wilmington's secured claim in addition to Ms. Steiner's failure to file a motion to

---

[175] Case No. 18-42809, ECF No. 17 (Schedule A/B, p. 10; Schedule C, p. 17).
[176] Case No. 18-42809, ECF No. 24.
[177] Case No. 18-42809, ECF No. 6.
[178] Case No. 18-42809, ECF No. 25.
[179] Case No. 18-42809, ECF No. 31.
[180] Case No. 18-42809, ECF No. 40. Note that the record includes a "Response" to Wilmington's objection, but it appears to have been mis-linked to Wilmington's objection since the Response is in reference to a different lender and different property. ECF No. 51.
[181] Case No. 18-42809, ECF No. 71.
[182] Case No. 18-42809, ECF No. 74.
[183] Case No. 18-42809, ECF No. 100.
[184] Case No. 18-42809, ECF No. 106.
[185] Case No. 18-42809, ECF No. 124.

approve a loan modification; the Trustee also raised feasibility, in that Ms. Steiner was delinquent $1,673 in plan payments and had made only one of four payments that had come due.[186] Ms. Steiner responded with a motion to approve a trial loan modification with Selene Finance [Wilmington], stating that a copy of the modification agreement would be provided once it was approved.[187] Both the Trustee and Wilmington objected to Ms. Steiner's motion.[188]

In its objection, Wilmington denied there was a pending loan modification with respect to NW 36th, pointing out that the loan was not even eligible for modification. Ms. Steiner had made no payments on the loan in 2018 or 2019 and Wilmington had terminated her prior loss mitigation agreement due to her failure to make payments.[189] At the same time, Wilmington also objected to confirmation of Ms. Steiner's fourth amended plan because of Ms. Steiner's attempts to incorporate a nonexistent loan modification into the plan.[190] Ms. Steiner responded that Selene Finance [Wilmington] had approved a trial loan modification in October 2018 (eight months earlier) and that she was still waiting to receive the paperwork.[191] She followed up with an amended plan lowering the plan payment to $200 per month and removing any treatment of Wilmington of NW 36th from the plan.[192]

The Bankruptcy Court denied Ms. Steiner's motion to approve the loan modification, denied confirmation of Ms. Steiner's fifth plan, and denied Wilmington's objection to confirmation as moot.[193] The Court dismissed Ms. Steiner's bankruptcy case for her failure to bring the plan payments current pursuant to Court order; she was $548 delinquent at the time of dismissal.[194] Because the $1,600 Ms. Steiner paid in to the plan was refunded to her, Wilmington received no plan distributions.[195]

**8)  The Three 2019 Bankruptcy Cases & Related State Court Litigation**

The three bankruptcy cases the Steiners filed in August 2019 were all filed to stop Wilmington from foreclosing on the property at NW 36th.

---

[186] Case No. 18-42809, ECF No. 131.
[187] Case No. 18-42809, ECF No. 143.
[188] Case No. 18-42809, ECF Nos. 149, 156.
[189] Case No. 18-42809, ECF No. 156.
[190] Case No. 18-42809, ECF No. 158.
[191] Case No. 18-42809, ECF No. 167.
[192] Case No. 18-42809, ECF No. 171.
[193] Case No. 18-42809, ECF Nos. 189, 193, 197.
[194] Case No. 18-42809, ECF No. 196.
[195] Case No. 18-42809, ECF No. 205.

Shortly after Ms. Steiner filed the first of the three cases on August 16, 2019, ten days before Wilmington's foreclosure sale set for August 26, Wilmington filed an emergency motion to dismiss the chapter 13 filing for abuse or, in the alternative, seeking relief from stay.[196] Wilmington again alleged that the loan had matured on April 1, 2011, and stated that Ms. Steiner was contractually due for the monthly payment for November 1, 2007 and thereafter (almost five years of payments, or 42 payments at $1,106.22 per month). Wilmington's payoff amount was now $85,539.88 (almost double the $43,000 payoff in 2010), of which only $26,531.19 was principal; the balance owed was for interest, late charges, escrow, attorney fees, and other expenses. Wilmington represented that it had attempted to foreclose five times: Wilmington cancelled the first foreclosure sale after Ms. Steiner filed the 2017 bankruptcy case and cancelled the next three after the Steiners were approved for loan modifications (which later failed). Ms. Steiner had filed this, the most recent case, Wilmington alleged, to stop the foreclosure sale set for August 26 and for which Wilmington had incurred $2,159.20 in expenses.[197]

In response, Ms. Steiner accused Wilmington of not being the holder of the note and deed of trust, based on what she asserted were "gaps" in the chain of title.[198] She accused Wilmington of failing to send her loan modification paperwork. She said she only owed Wilmington $35,000, and that was to Selene Finance (Wilmington's servicer). Ms. Steiner requested the Court deny Wilmington's motion because "Movant omitted documents in order to get possession of Debtor's property." In the meantime, Mr. Steiner filed his separate chapter 13 case on August 22.

On the morning of August 26, with the foreclosure sale set for later that afternoon, the Bankruptcy Court held an emergency hearing on Wilmington's motion. The Court authorized Wilmington to cry the sale but to continue it three days to the afternoon of August 29, as allowed under applicable Missouri law. The purpose of the continuance was to give Ms. Steiner time to muster her exhibits to show that Wilmington did not have standing to seek relief to foreclose. The Court set a final hearing for the morning of August 29.[199] Ms. Steiner's supplemental response stated she had been the victim of mortgage fraud and again denied that Wilmington held the

---

[196] Case No. 19-42111, ECF Nos. 17, 19.
[197] Case No. 19-42111, ECF No. 19.
[198] Case No. 19-42111, ECF No. 25.
[199] Case No. 19-42111, ECF No. 26.

note.[200] Ms. Steiner also filed a "Motion to Vacate" Wilmington's motion, with similar allegations.[201]

The Court held the final hearing on August 29 and took the matter briefly under advisement to review Ms. Steiner's exhibits.[202] After careful review, the Court issued an order annulling the stay retroactively to the petition date, and allowing Selene Finance as servicer for Wilmington, in addition to anyone acting on its behalf, to foreclose the deed of trust on NW 36th and to pursue applicable remedies under state law,[203] also denying Ms. Steiner's motion to vacate the motion for relief as "unfounded."[204] The Court also set a hearing for the next day, August 30, to hear Wilmington's motion to dismiss with prejudice.[205] But on the afternoon of August 29, at approximately 3:30 p.m. (or 30 minutes before the scheduled sale), the Steiners filed their joint chapter 7 case, in another apparent attempt to halt the foreclosure sale on NW 36th.

As noted above, the Bankruptcy Court held a hearing in all three pending bankruptcy cases on the morning of August 30 and entered an order dismissing or voiding the filings with a 180-day bar.[206] The Steiners appealed, and the Bankruptcy Court was later affirmed.[207]

Wilmington conducted the foreclosure sale on the afternoon of August 30, 2019, and a third-party individual, named Jack Murphy, was the successful bidder. Before Mr. Murphy could sue to evict the Steiners, the Steiners sued him and other parties in October 2019 in Jackson County Circuit Court.[208] The state court later dismissed the case with prejudice and the Steiners' appeal was unsuccessful. After the mandate from the Missouri Court of Appeals was returned, the state court denied the Steiners' request for a new hearing.

In the meantime, in September 2019, the Steiners sued Wilmington and Selene Finance alleging the foreclosure had been wrongful.[209] The state court dismissed the case with prejudice and the Steiners' appeal was unsuccessful.

---

[200] Case No. 19-42111, ECF No. 28.
[201] Case No. 19-42111, ECF No. 29.
[202] Case No. 19-42111, ECF No. 33.
[203] Case No. 19-42111, ECF No. 34.
[204] Case No. 19-42111, ECF No. 35.
[205] Case No. 19-42111, ECF No. 37.
[206] Case No. 19-42111, ECF No. 39.
[207] Case No. 19-42111, ECF Nos. 66, 67.
[208] *Neil Steiner et al v. Jack Murphy et al*, Jackson County Circuit Case No. 1916-CV28576.
[209] *Neil B. Steiner v. Premium [sic] Mortgage Acquisition Trust*, Jackson County Circuit Case No. 1916-CV24781.

While the Steiners' petition against Mr. Murphy was pending, he sued them for unlawful detainer.[210] The state court record reflects protracted litigation on the Steiners' counterclaims and several unsuccessful appeals and a preliminary judgment entered in favor of Mr. Murphy and against the Steiners for damages in June 2020 and a final judgment on November 30, 2021. Litigation continued after the final judgment and through May 2024. Additional litigation involving Jack Murphy will be discussed below.[211]

### 9) 2020 Bankruptcy Case

While the state court litigation between Mr. Murphy and the Steiners was pending, Ms. Steiner filed her tenth bankruptcy case in November 2020, after the refiling bar in the 2019 case had expired. Ms. Steiner's petition listed NW 36th as her residential address, but she did not schedule the property on her Schedule A/B filed with the petition and instead claimed her rental property as her exempt homestead.[212] Ms. Steiner scheduled Mr. Murphy as the holder of a secured claim against NW 36th in the amount of $180,000.[213] She scheduled no other unsecured creditors, notwithstanding that she had scheduled unsecured creditors in previous bankruptcy filings and many had filed claims.[214] Her proposed plan with a payment of $2,540 per month did not treat Mr. Murphy,[215] even though she filed an Initial Statement of Eviction against Mr. Murphy stating that she had a right to stay in her residence.[216]

The Chapter 13 Trustee promptly filed a motion to dismiss for abuse and requested another 180-day bar, reciting the history of bad faith and the incomplete filings in this case.[217] Ms. Steiner's response refuted the Trustee's allegations; Ms. Steiner stated she had since corrected her incomplete filings and had made the first plan payment.[218] After a hearing, the Court denied the Trustee's Motion.[219]

---

[210] *Jack Murphy v. Neil Steiner et al*, Jackson County Circuit Case No. 1916-CV30244.
[211] Jack Murphy filed a second forcible detainer action against the Steiners on March 30, 2020, although that case was dismissed without prejudice. It is unclear to this Court why. *Jack Murphy as Agent for Owner v. Neil Steiner, et al*, Jackson County Circuit Case No. 2016-CV10184.
[212] Case No. 20-41952, ECF No. 1 (Schedule A/B, p. 11; Schedule C, p. 22).
[213] Case No. 20-41952, ECF No. 1 (Schedule D, p. 24).
[214] Case No. 20-41952, ECF No. 1 (Schedule E/F, p. 25).
[215] Case No. 20-41952, ECF No. 2.
[216] Case No. 20-41952, ECF No. 11.
[217] Case No. 20-41952, ECF No. 27.
[218] Case No. 20-41952, ECF No. 40.
[219] Case No. 20-41942, ECF No. 87.

A second plan filed after confirmation of the first plan was denied for Ms. Steiner's failure to file a certificate of service showing she had served the plan. Ms. Steiner's next plan proposed a plan payment of $2,100 per month and included Mr. Murphy in the executory contract section with the notation "on appeal"; but the plan failed to specify whether Ms. Steiner's intent was to assume or reject the contract.[220] After the Trustee moved to deny confirmation for many reasons, including the failure to propose a treatment for Mr. Murphy, Ms. Steiner filed a third plan removing Mr. Murphy from the executory contract section.[221]

In early January 2021, approximately two months after filing her case, Ms. Steiner filed an amended Schedule G, listing Mr. Murphy as the holder of an unexpired lease "on appeal."[222] At the same time, she filed a "Motion for Adversary Hearing Against Jack Murphy."[223] She alleged the foreclosure sale had not actually taken place such that Mr. Murphy could not be the owner, and requested the Court have a hearing "on the documents the Creditor has submitted and are [sic] inaccurate." The Court denied the motion since it was not clear what relief Ms. Steiner was seeking, without prejudice to the filing of an adversary complaint.[224] In lieu of filing an adversary complaint, Ms. Steiner filed another plan, proposing a payment of $2,000 per month and omitting any treatment of Mr. Murphy.[225] She also filed an amended Schedule G removing him from the list of executory contracts and unexpired leases.[226]

Ms. Steiner would go on to file more amended plans – a total of 15.[227] She later filed a third Amended Schedule A/B claiming ownership of NW 36th, valued at $200,000.[228] The Court denied a second motion of the Chapter 13 Trustee to dismiss with a 180-day bar based on Ms. Steiner's assurances that she not trying to relitigate her loss to Mr. Murphy but only wanted to save her remaining property (the former rental property), in addition to the fact that she was proposing a 100% plan, was current on plan payments, and was making progress fixing the mistakes that had prevented her plans from being confirmed.[229]

---

[220] Case No. 20-41952, ECF No. 45.
[221] Case No. 20-41952, ECF No. 58.
[222] Case No. 20-41952, ECF No. 62.
[223] Case No. 20-41952, ECF No. 65.
[224] Case No. 20-41952, ECF No. 98.
[225] Case No. 20-41952, ECF No. 109.
[226] Case No. 20-41952, ECF No. 119.
[227] Case No. 20-41952, ECF Nos. 2, 45, 58, 95, 109, 120, 126, 136, 148, 172, 192, 213, 245, 266, and 279.
[228] Case No. 20-41952, ECF No. 171.
[229] Case No. 20-41952, ECF Nos. 143, 180.

The Court's decision proved to be short-sighted. Ten months after the bankruptcy filing, in October 2021, Mr. Murphy filed a motion for relief from stay and a proof of claim. Contrary to Ms. Steiner's schedules, she and Mr. Steiner had signed a lease with Mr. Murphy two years previously (in October 2019, shortly after Mr. Murphy purchased NW 36th at the foreclosure sale) to remain in NW 36th and pay rent to Mr. Murphy. The Steiners had defaulted on the lease, however, and were $36,548.70 past due for pre- and postpetition rent payments since March 2020.[230] Mr. Murphy had in fact given notice to terminate the lease shortly before Ms. Steiner filed her bankruptcy case. Mr. Murphy therefore requested relief from the stay for the purpose of pursuing an eviction in state court.[231] Ms. Steiner responded by filing a motion for sanctions against Mr. Murphy's law firm for allegedly "withholding documents"; a motion "to deny the claim filed by Jack Murphy"; and a response and a supplement to the response, all in essence asserting that no foreclosure had occurred and that Mr. Murphy's actions were "illegal."[232] After an evidentiary hearing, the Court granted Mr. Murphy's motion to lift the stay to pursue eviction and denied Ms. Steiner's other motions as baseless.[233]

Shortly before the evidentiary hearing, Ms. Steiner filed another objection to Mr. Murphy's claim.[234] After losing at the evidentiary hearing, Ms. Steiner also filed another "motion for adversary hearing" with respect to the property at NW 36th;[235] both the objection and motion reiterated the same frivolous arguments that the Wilmington's foreclosure was wrongful and no foreclosure sale had occurred, in addition to an argument that Mr. Murphy's management company was not owned by him. Before either the objection to claim or the motion for adversary hearing could be heard, the Trustee filed a motion to dismiss for default. Ms. Steiner's response to the motion to dismiss asserted she had made a $5,000 plan payment and was "unaware" the Trustee had not received it.[236] The Court entered another conditional order that Ms. Steiner bring the plan payments current. Instead, Ms. Steiner filed a motion to suspend the missed payment. The Court therefore dismissed the case for her failure to comply with the Court's condition.[237] Ms. Steiner was $11,500 in default at the time of dismissal.

---

[230] Case No. 20-41952, POC 8-1.
[231] Case No. 20-41952, ECF No. 207.
[232] Case No. 20-41952, ECF Nos. 218, 220, 222, and 226.
[233] Case No. 20-41952, ECF Nos. 249, 262, and 263.
[234] Case No. 20-41952, ECF No. 246.
[235] Case No. 20-41952, ECF No. 283.
[236] Case No. 20-41952, ECF No. 267.
[237] Case No. 20-41952, ECF No. 285.

After dismissal, the Court issued an order to show cause on its own motion ("OSC") why the Court should not impose a one-year bar on refiling.[238] Ms. Steiner's response to the OSC blamed her creditors for filing inaccurate paperwork, among other things.[239] She denied any of her cases had been filed in bad faith and promised that if the Court would allow her to reinstate her case or allow her to convert to chapter 7, she would not file "any more paperwork to cause the Court harm or to make [her creditors] do any more paperwork." The Court, in a written opinion, rejected Ms. Steiner's plea and imposed a one-year bar.[240] During the 15 months the 2020 bankruptcy case was pending, Ms. Steiner paid in $20,240, of which $15,108.71 was refunded to her.[241] Mr. Murphy received no distributions.

Two days after the Bankruptcy Court closed the case, the Steiners sued the the lawyers who had represented Wilmington (Millsap & Singer) and Mr. Murphy (Julie Anderson) in state court.[242] The state court dismissed the case with prejudice in July 2023; the Steiners' appeal was also dismissed.

In the meantime, ten months after the Bankruptcy Court had dismissed the bankruptcy case, in December 2022, and while the bar on refiling remained in place, Ms. Steiner moved to reopen the bankruptcy case and to waive the reopening filing fee.[243] The basis for reopening is very hard to follow, but essentially reiterated that Mr. Murphy was not the owner of his property management company (this time citing the Corporate Transparency Act) and that she intended to file another appeal in the pending state court case. The Court denied the motion without a hearing, noting that it was untimely and another attempt to relitigate the issues with Mr. Murphy that she had lost in both the bankruptcy and state courts.[244]

Turning to the third property:

**C.** ***Bankruptcy Case History with Respect to SW 10th (Original Rental Property and Current Homestead Property) and The Steiners' Efforts to Thwart Creditor Deutsche Bank and its Servicer, Carrington Mortgage***

**1) 2010 Bankruptcy Case**

---

[238] Case No. 20-41952, ECF No. 292.
[239] Case No. 20-41952, ECF No. 294.
[240] Case No. 20-41952, ECF No. 303.
[241] Case No. 20-41952, ECF No. 298.
[242] *Neil Steiner, et al v. Millsap & Singer, et al*, Jackson County Circuit Case No. 2216-CV06105.
[243] Case No. 20-41952, ECF Nos. 308, 309.
[244] Case No. 20-41952, ECF No. 310.

In Ms. Steiner's 2010 bankruptcy case, in addition to 87 Green Turtle and NW 36th, Ms. Steiner scheduled a third piece of property with an address of 410 S. 10th St. in Blue Springs, Missouri, valued at $65,000.[245] Her Schedule D reflected a deed of trust held by Countrywide Home Lending with a balance due of $39,352.[246] Her Schedule I reflected rental income from this property of $1,000 per month.[247] Ms. Steiner's first plan proposed that she continue to make direct mortgage payments, on the grounds the loan was current.[248]

Ms. Steiner was not current on the loan, however, and Deutsche Bank National Trust Co.[249] filed a proof of claim reflecting arrears of $7,176.76 against a balance due of $44,314.10,[250] along with a motion for relief from stay.[251] The motion as amended alleged that the Steiners had failed to pay five postpetition direct plan payments and sought relief to foreclose. The parties resolved the motion with a stipulated order allowing Ms. Steiner time to catch up the missed payments.[252] The Court does not know whether Ms. Steiner complied with the order because, in the meantime, the case was dismissed for default after she failed to comply with the Court's order to cure the default.

### 2) 2012 Bankruptcy Case

In the 2012 bankruptcy case, Ms. Steiner valued 410 S. 10th as worth $55,000, producing income of $1,083 per month.[253] Her plan proposed to pay BAC Lending [Deutsche Bank] the ongoing monthly mortgage payment of $467.53 per month and to cure the arrears, estimated to be $11,710.06.[254] Deutsche Bank's proof of claim showed that Ms. Steiner had underestimated the arrears, which were $14,423.72 against a balance owed of $51,741.30.[255] Deutsche Bank received distributions totaling $840.48 out of the $2,100 Ms. Steiner paid into the plan, before her case was dismissed for the failure to commence payments.[256]

### 3) 2012 Bankruptcy Case

---

[245] Case No. 10-40684, ECF No. 1 (Schedule A, p. 10).
[246] Case No. 10-40684, ECF No. 1 (Schedule D, p. 15).
[247] Case No. 10-40684, ECF No. 1 (Schedule I, p. 23).
[248] Case No. 10-40684, ECF No. 2.
[249] FKA BANKERS TRUST COMPANY OF CALIFORNIA, NATIONAL ASSOCIATION.
[250] Case No. 10-40684, POC 6-1.
[251] Case No. 10-40684, ECF Nos. 44, 48.
[252] Case No. 10-40684, ECF No. 54.
[253] Case No. 11-43031, ECF No. 1 (Schedule A, p. 11; Schedule I, p. 28).
[254] Case No. 11-43031, ECF No. 2.
[255] Case No. 11-43031, POC 2-1.
[256] Case No. 11-43031, ECF No. 56.

Ms. Steiner valued 410 S. 10th at $45,000 in her third bankruptcy case, producing rental income of $500 per month.[257] Her plan proposed to pay the ongoing mortgage payments of $494.14 to Bank of America [Deutsche Bank] and to cure the estimated $6,000 of arrears through the plan.[258] Ms. Steiner's estimate substantially understated the arrears; Deutsche Bank's proof of claim showed arrears of $15,597.24 against a balance owed of $51,124.65.[259] Deutsche Bank received $4,263.14 in distributions before the case was dismissed.[260]

### 4) 2013 Bankruptcy Case

In her fourth bankruptcy case, Ms. Steiner valued 410 S. 10th as worth $50,000 but showed it was producing no rental income.[261] Her plan proposed direct payments of an ongoing mortgage payment of $350 per month and no mortgage arrears to Bank of America [Deutsche Bank].[262] Deutsche Bank filed two objections to confirmation, however, alleging it was owed arrears of $19,238.36 against a balance due of $56,618.76.[263] The Bankruptcy Court dismissed the case for Ms. Steiner's failure to commence payments and Deutsche Bank received no distributions.[264]

### 5) 2016 Bankruptcy Case

In her Schedule A/B in the 2016 case, Ms. Steiner scheduled 410 S. 10th as worth $55,000, with her portion worth $15,000, producing income of $500 per month.[265] Her Schedule D did not list Deutsche Bank as a secured creditor. Her plan proposed to pay ongoing mortgage payments of $494.14 to Deutsche Bank estimating no arrears.[266] Deutsche Bank objected to confirmation of the plan, alleging the arrears were approximately $33,472.96.[267] Ms. Steiner's second amended plan proposed paying the mortgage payment through the plan in addition to $33,000 of arrears.[268] Deutsche Bank's second objection to confirmation was withdrawn.[269] Several amended plans later, however, Ms. Steiner proposed direct payments on the arrears and an ongoing payment of $350

---

[257] Case No. 12-40434, ECF No. 1 (Schedule A, p. 9; Schedule I, p. 19).
[258] Case No. 12-40434, ECF No. 2.
[259] Case No. 12-40434, POC 4-1.
[260] Case No. 12-40434, ECF No. 135.
[261] Case No. 13-42210, ECF No. 13 (Schedule A, p. 2, Schedule I, p. 14).
[262] Case No. 13-42210, ECF No. 16.
[263] Case No. 13-42210, ECF Nos. 34, 62.
[264] Case No. 13-42210, ECF No. 72.
[265] Case No. 16-40849, ECF No. 22 (Schedule A/B, p. 1; Schedule I, p. 20).
[266] Case No. 16-40849, ECF No. 34.
[267] Case No. 16-40849, ECF No. 42. *See* POC 9-1 showing a principal balance due of $65,300.27 and $33,472.96 in arrears.
[268] Case No. 16-40849, ECF No. 60.
[269] Case No. 16-40849, ECF Nos. 114, 163.

31

per month.[270] After confirmation was denied for other reasons, she filed an amended plan proposing to pay Carrington Mortgage [Deutsche Bank's servicer] its ongoing mortgage payment of $425 per month and arrears of $33,000 through the plan.[271] The next plan proposed an ongoing payment of $412 per month.[272] Deutsche Bank did not object to these subsequent amended plans but none were confirmed before the case was dismissed for failure to comply with the Court's order to cure. Deutsche Bank received $4,469.85 in plan distributions.[273]

### 6) 2017 Bankruptcy Case

Ms. Steiner's Schedule A/B filed in the 2017 bankruptcy case listed the value of 410 S. 10th as $75,000, with her portion worth $55,000 and she did not schedule Deutsche Bank as a secured creditor; she again scheduled $500 of rental income.[274] Her plan proposed to pay an ongoing monthly mortgage payment to Carrington [Deutsche Bank] of $350 per month and an estimated $25,000 of arrears.[275] After confirmation of that plan was denied, her next plan proposed to pay Carrington [Deutsche Bank] in full through the plan in the amount of $42,000.[276] Ms. Steiner did not schedule Deutsche Bank as a creditor; it only received notice after an attorney entered an appearance.[277] Again, the 2017 case was dismissed for abuse before Deutsche Bank could file a claim. Ms. Steiner made no plan payments during the pendency of the case.[278]

### 7) 2018 Bankruptcy Case

In the 2018 case, Ms. Steiner scheduled 410 SW 10th (not S) as worth $110,000 and her portion worth the same.[279] Her Schedule D listed Carrington [Deutsche Bank] as the holder of the deed of trust on the property with a balance due of $20,000, producing income of $1,000 per month.[280] Her first plan proposed to cure $20,000 of arrears with a payment of $410 per month.[281] Deutsche Bank objected to confirmation on the grounds the arrears were estimated to be

---

[270] Case No. 16-40849, ECF No. 221.
[271] Case No. 16-40849, ECF No. 251.
[272] Case No. 16-40849, ECF No. 254.
[273] Case No. 16-40849, ECF No. 303.
[274] Case No. 17-41226, ECF No. 21 (Schedule A/B, p. 1; Schedule D, p. 13; Schedule I, p. 21).
[275] Case No. 17-41226, ECF No. 20.
[276] Case No. 17-41226, ECF No. 56.
[277] Case No. 17-41226, ECF No. 19.
[278] Case No. 17-41226, ECF No. 76.
[279] Case No. 18-42809, ECF No. 17 (Schedule A/B, p. 11; Schedule I, p. 35).
[280] Case No. 18-42809, ECF No. 17 (Schedule D, p. 22).
[281] Case No. 18-42809, ECF No. 33.

$46,718.81.[282] Its filed proof of claim established arrears of $45,543.87 against principal owed of $70,675.77.[283]

Ms. Steiner objected to Deutsche Bank's proof of claim four times. Her first attempt, alleging that Deutsche Bank did not hold the mortgage, was stricken since she failed to use the official form for claim objections.[284] Ms. Steiner next filed two objections the same day, using the proper form, and alleging Deutsche Bank was not on the title to 410 S. 10th.[285] The Chapter 13 Trustee responded to both objections that the information was not specific enough for him to administer the claim and requested both objections be set for hearing.[286] Deutsche Bank's response attached the proof that it was the holder of a recorded deed of trust.[287]

Before the Court could hear the objections, Ms. Steiner filed a fourth objection to Deutsche Bank's claim – this time only as to the amount – asserting that the balance should only be $46,718 based on a statement she had allegedly received from the Bank.[288] The Chapter 13 Trustee again filed a response that the information in the objection was insufficient for him to administer the claim.[289] In the meantime, however, Deutsche Bank filed a motion to lift the stay on the grounds Ms. Steiner was in default for the failure to make three postpetition mortgage payments.[290] Ms. Steiner did not respond and the Court granted the motion and lifted the stay.[291] Thereafter, when the pending claims objections came before the Court for hearing, the Court sustained them on the grounds that since the stay had been lifted the Trustee would not be making payments on the claim.[292]

Ms. Steiner was not finished with Deutsche Bank, however. After the Court lifted the stay, Ms. Steiner filed a motion to approve a trial loan modification with Deutsche Bank, stating she would provide a copy once the modification was approved (the same as she had with Wilmington/Selene Finance).[293] Both the Trustee and Deutsche Bank objected; the Trustee on the

---

[282] Case No. 18-42809, ECF No. 65.
[283] Case No. 18-42809, POC 6-1.
[284] Case No. 18-42809, ECF No. 66.
[285] Case No. 18-42809, ECF Nos. 83, 88.
[286] Case No. 18-42809, ECF Nos. 93, 94.
[287] Case No. 18-42809, ECF No. 117.
[288] Case No. 18-42809, ECF No. 119.
[289] Case No. 18-42809, ECF No. 134.
[290] Case No. 18-42809, ECF No. 89.
[291] Case No. 18-42809, ECF No. 116.
[292] Case No. 18-42809, ECF No. 139.
[293] Case No. 18-42809, ECF No. 142.

grounds Ms. Steiner had failed to use the appropriate local form and Deutsche Bank on the grounds that she was not eligible for a loan modification.[294] Deutsche Bank was likewise compelled to file another objection to the most recent amended plan, since Ms. Steiner's plan still proposed to pay Deutsche Bank only $20,000, notwithstanding that the Court had already lifted the stay.[295]

Ms. Steiner in turn filed a "response" to her own claim objection (which the Court had already denied) that because Deutsche Bank allegedly referred to the wrong proof of claim number in its motion for relief, the stay should not be lifted.[296] In what appeared to be a second attempt to collaterally attack the order the Court had already entered lifting the stay, she also filed a "response" to Deutsche Bank's objection to her motion for loan modification, again challenging Deutsche Bank's recorded deed of trust, and arguing that the stay had not lifted because of an incorrect reference to the proof of claim number. Ms. Steiner also complained that the Bank was not "allowing her" to obtain a loan modification.[297] The Court denied her motion to approve the (nonexistent) loan modification; entered an order that the "response" to the claim objection had already been ruled; and denied the objection to confirmation as moot since an amended plan had been filed removing Deutsche Bank from the plan.[298]

Before the next plan was due, the Court dismissed the case for Ms. Steiner's failure to comply with the Court order to become current by a date certain. Deutsche Bank received no plan distributions.[299]

### 8)  2019 Bankruptcy Cases & State Court Litigation

As noted above, the filing of the three 2019 bankruptcy cases were motivated by attempts to stop the foreclosure of the NW 36th property [Wilmington]. Ms. Steiner's plan in her 2019 chapter 13 case proposed to cure Deutsche Bank's arrears through the plan[300] but the case was dismissed in less than 30 days after it was filed (on October 30, 2019) with a one-year bar on refiling, and Deutsche Bank did not participate in any of the 2019 bankruptcy cases.[301]

It is unclear to the Court what happened with 410 S. [or SW] 10th between October 2019 and October 2023. The state court records reflect, however, that in 2022, the Steiners filed four

---

[294] Case No. 18-42809, ECF Nos. 145, 155.
[295] Case No. 18-42809, ECF Nos. 124, 157.
[296] Case No. 18-42809, ECF No. 161. The "response" is not completely clear but that is how the Court construed it.
[297] Case No. 18-42809, ECF No. 170.
[298] Case No. 18-42809, ECF Nos. 183, 188, 192.
[299] Case No. 18-42809, ECF No. 205.
[300] Case No. 19-42111, ECF No. 5.
[301] Case No. 19-42111, ECF No. 40.

state court lawsuits against Deutsche Bank and its servicer, Carrington Mortgage. In January 2022, they sued Deutsche Bank and CSM Trustee Foreclosure Corporation; the state court dismissed the case on the defendants' motion March 8, 2022.[302]

Almost two weeks later, on March 21, 2022, Ms. Steiner sued Deutsche Bank; the state court dismissed the case without prejudice on Deutsche Bank's motion in December 2022.[303] In the meantime, on May 3, 2022, the Steiners acting jointly sued Carrington Mortgage; the state court dismissed the case without prejudice on the Defendant's motion to quash service or in the alternative motion to dismiss for failure to state a claim on June 15, 2022.[304] Ms. Steiner then filed another state court petition against Carrington Mortgage on December 14, 2022; that case was dismissed without prejudice on April 12, 2023.[305]

### 9) 2020 Bankruptcy Case

In the 2020 bankruptcy case, Ms. Steiner scheduled 410 SW 10th as worth $120,000 and claimed a $50,000 homestead exemption, notwithstanding that her petition listed NW 36th as her residence.[306] She did not schedule Deutsche Bank or Carrington, its servicer, as a secured creditor on her initial Schedule D. Her first plan proposed cure of Carrington's arrears of $60,000 and payment of the ongoing monthly mortgage of $410 through the plan but also included Carrington as a mortgage to be paid in full during the life of the plan at 0% interest in another plan section.[307] Deutsche Bank objected to confirmation on the grounds the ongoing mortgage payment was $428.80, not $410, and that the proposed treatment was ambiguous.[308]

Ms. Steiner's amended plan removed Deutsche Bank from the "payment in full" section of the plan but provided for direct payment of the ongoing payment and arrears.[309] The Chapter 13 Trustee moved to deny confirmation based on the direct payment (which was contrary to local rule requirements), among other issues.[310] Deutsche Bank again objected to confirmation.[311] Ms.

---

[302] *Neil B. Steiner v. Deutsche Bank National Trust*, Jackson County Circuit Court Case No. 2216-CV01725. The Court's mail to the Steiners at the N.W. 36th address they used was returned undeliverable in December 2022.
[303] *Deborah Steiner v. Deutsche Bank National Trust*, Jackson County Circuit Court Case No. 2216-CV5549.
[304] *Neil B. Steiner et al v. Carrington Mortgage Service*, Jackson County Circuit Court Case No. 2216-CV09538.
[305] *Deborah Steiner v. Carrington Mortgage Service*, Jackson County Circuit Court Case No. 2216-CV28560.
[306] Case No. 20-41952, ECF No. 1 (Schedule A, p. 12; Schedule C, p. 22).
[307] Case No. 20-41952, ECF No. 2.
[308] Case No. 20-41952, ECF No. 36.
[309] Case No. 20-41952, ECF No. 45.
[310] Case No. 20-41952, ECF No. 50.
[311] Case No. 20-41952, ECF No. 57.

Steiner's third amended plan restored conduit payment of Carrington [Deutsche Bank]'s secured claim through the plan.[312]

In the meantime, Deutsche Bank filed a proof of claim establishing mortgage arrears of $60,830.96 against a principal balance due of $81,277.40.[313] Ms. Steiner's "Motion to Deny Deutsche Bank Claim 3.1" – alleging she did not owe $81,277.40 and that Deutsche Bank was not the holder of the note – was stricken for her failure to object to the claim using the official form.[314] Ms. Steiner then filed an objection using the proper form, alleging the same grounds.[315] After Deutsche Bank filed a response, denying Ms. Steiner's allegations, Ms. Steiner withdrew the objection.[316]

After the Court denied confirmation of the third plan, Ms. Steiner reverted to her original improper treatment of Deutsche Bank, filing an amended plan treating Carrington [Deutsche Bank] as both paid through the plan with $60,000 in arrears and as paid in full.[317] Deutsche Bank was compelled to file a second objection to confirmation.[318] Ms. Steiner objected to the objection, arguing that she had made two direct payments to Carrington [Deutsche Bank] and was current on payments and had requested a loan modification.[319] The hearing on Deutsche Bank's objection to confirmation was cancelled as moot after Ms. Steiner filed another amended plan.[320] Ms. Steiner thereafter objected twice to two of Deutsche Bank's notice of fees, but later withdrew the objections.[321] She did not object to subsequent requests for fees, which the Court all approved as reasonable.

As the Court noted above, Ms. Steiner filed numerous plans in the 2020 case with disparate and conflicting treatments of her creditors, and the same was true of subsequent plan treatments of Deutsche Bank. Deutsche Bank's objection to confirmation – raising again conflicting treatment –

---

[312] Case No. 20-41952, ECF No. 58.
[313] Case No. 20-41952, POC 3-1.
[314] Case No. 20-41952, ECF No. 64.
[315] Case No. 20-41952, ECF No. 73.
[316] Case No. 20-41952, ECF Nos. 89, 106.
[317] Case No. 20-41952, ECF No. 109.
[318] Case No. 20-41952, ECF No. 113.
[319] Case No. 20-41952, ECF No. 128.
[320] Case No. 20-41952, ECF No. 129.
[321] Case No. 20-41952, ECF Nos. 142, 150, 189, 191.

had not been ruled when the case was dismissed with a one-year bar.[322] Deutsche Bank received distributions of only $4,720.79 in principal payments during the 15 months the bankruptcy case was pending.[323]

## II.      Part Two: Abuse in the Current Case

The first 2023 bankruptcy case[324] was short-lived, since Ms. Steiner was not eligible to file based on her inexplicable failure to take the prepetition credit counseling course (notwithstanding having done so in all the previous cases) so the Court will not detail the other actions in that case indicative of abuse but, rather, focus on the most recent case.[325]

### Emergency Filing in October 2023

Ms. Steiner filed this case on October 11, 2023, as an emergency filing, consisting only of the petition, Schedules A/B and C, and mailing matrix.[326] The petition listed the property at NW 36th as her residential address and the property at 410 SW 10th as the location of her business. The Schedule A/B listed ownership of 87 Green Turtle valued at $300,000; NW 36th valued at $250,000; and 410 SW 10th valued at $165,000. The Schedule B listed no business interests. The Schedule C claimed a $50,000 homestead exemption in 410 SW 10th. The accompanying mailing matrix listed only three creditors: Tan-Tar-A, Jack Murphy, and Carrington Mortgage [Deutsche Bank].  Ms. Steiner also filed a declaration that she had received no employer payments in the 60 days before the filing.[327] As she had in all her pro se cases, Ms. Steiner filed an application to pay the filing fee in installments.[328] The Court denied the application for Ms. Steiner's failure to pay filing fees totaling $730 owed from four previous bankruptcy cases.[329] The Court entered an order setting a deadline for payment of the filing fee and the filing of the plan and missing schedules and statements.[330]

---

[322] Case No. 20-41952, ECF No. 273.
[323] Case No. 20-41952, ECF No. 298.
[324] Case No. 23- 41255 filed Sept. 11, 2023.
[325] Case No. 23-41421 filed Oct. 11, 2023, the Hon. Cynthia A. Norton, presiding.
[326] Case No. 23-41421, ECF No. 1.
[327] Case No. 23-41421, ECF No. 3.
[328] Case No. 23-41421, ECF No. 4.
[329] Case No. 23-41421, ECF No. 9 (Order Denying the Application to Pay Filing Fees in Installments for failure to pay filing fees in prior case number(s) 19-42111, 18-42809, 17-41226 and 16-40849 in the amount of $260.00, $150.00, $210.00 and $110.00).
[330] Case No. 23-41421, ECF Nos. 8, 9.

Ms. Steiner did timely comply with the Court's order, but the missing schedules she filed were woefully inaccurate.[331] She scheduled Tan-Tara-A, Jack Murphy, and Carrington as secured creditors on the Schedule D with respect to the three properties she asserted still owning (owed $20,000, $0, and $30,000 respectively, but with different values than she had used on the Schedule A/B) and no unsecured creditors, notwithstanding that she had at least six unsecured creditors, including a substantial unpaid student loan debt.[332] Her Schedule G listed Tan-Tar-A and Mr. Murphy as the holder of unexpired leases with the notation "deed fraud." Her Schedule I of income described hers and Mr. Steiner's employment status as "not employed" (instead of "self-employed," as she had disclosed in previous cases). Yet she listed $2,100 in business income for her, in addition to $800 of unemployment compensation for her and $2,300 for Mr. Steiner, for total household monthly income of $5,100 and attached no statement detailing her gross business income and expenses. As noted above, Ms. Steiner had not disclosed that she owned any business interests on her Schedule A/B filed with the petition, but she listed "abstracting" as a business on her statement of financial affairs (SOFA). Based on claimed monthly household expenses of only $1,600 for a household of two, her Schedule J showed net monthly income of $3,500 per month.

### First Proposed Plan

Notwithstanding what on paper appeared to be a substantial monthly cash flow available to pay creditors, Ms. Steiner's first plan proposed monthly plan payments of only $100 per month.[333] Her 100% payment plan proposed to avoid Tan-Tar-A's $30,000 "lien" on 87 Green Turtle and pay an ongoing $434 per month mortgage directly to Carrington [Deutsche Bank] on 410 SW 10th, estimating $0 arrears. Mr. Murphy's purported "lien" against NW 36th was not addressed. Ms. Steiner's unrealistic budget and refusal to accept the reality that she had irrevocably lost two of her three properties would cause her repeated problems in this case, as will be discussed below.

Deutsche Bank, reciting the lengthy history of the previous bankruptcy filings, objected to confirmation of Ms. Steiner's plan on bad faith grounds, arguing that Ms. Steiner's sole objective in filing the case was to hinder and delay its repeated attempts to foreclose on 410 SW 10th.[334]

---

[331] Case No. 23-41421, ECF No. 18.
[332] Based on the filed proofs of claims in this and previous cases. Several of the claims showed the debts were incurred within several months before the filing.
[333] Case No. 23-41421, ECF No. 17.
[334] Case No. 23-41421, ECF No. 22.

Deutsche Bank pointed out that Ms. Steiner had scheduled the Bank's secured claim as only $30,000, when the payoff was closer to $100,000 and noted that Ms. Steiner's financial circumstances had not changed from the previous cases. Ms. Steiner's bizarre response argued (inaccurately) that Deutsche Bank had never objected to any of her previous cases; that Deutsche Bank did not hold the deed of trust on 410 SW 10th; and falsely accused Deutsche Bank of failing to include a certificate of service on its objection, among other allegations.[335]

In the meantime, the Chapter 13 Trustee also objected to confirmation.[336] The Trustee's motion to deny confirmation raised numerous confirmation issues, including Ms. Steiner's failure to provide her most recently filed tax returns (an issue he had raised in many of his motions in the previous cases); plan length; bad faith based on Ms. Steiner's proposal to pay only $100 per month in the plan payment when her budget showed excess income of $3,500 (or more);  inability to complete the liquidation analysis giving the discrepancy in scheduled value of the three properties; disposable income issues, including that her SOFA showed social security income that was not reflected on the Schedule I in addition to the failure to provide the detailed itemization of business gross income and expense; the failure to treat Tan-Tar-A and Mr. Murphy, listed on the Schedule G; the failure to treat Mr. Murphy as listed on the Schedule D; the failure to schedule unsecured creditors (based on the four proofs of claim filed to date); and the failure to answer all questions in the SOFA, among other issues. The Trustee also requested copies of all bank and other statements of account from the date of filing.

Ms. Steiner's response stated she had provided her tax return and business income itemization; that the Steiners did not have unemployment income; that Mr. Murphy did not have a lease and was in "deed fraud"; and that she had otherwise complied with all the Trustee's requests.[337] She then filed amended Schedules A/B, D, and I, and an amended SOFA.[338] The amended schedules valued 87 Green Turtle at the $200,000 (vs. $300,000 previously) with a lien of $30,000 to Tan-Tar-A; NW 36th at the same $250,000 value but with no lien; and 410 SW 10th at $167,000 (vs. $165,000 previously) but with a $30,000 lien to Veterans Affairs (a creditor never previously scheduled in any of her bankruptcy cases and with no address). Ms. Steiner also scheduled as an asset a claim for damages worth $1,000,000 with respect to NW 36th; no details

---

[335] Case No. 23-41421, ECF No. 29.
[336] Case No. 23-41421, ECF No. 47.
[337] Case No. 23-41421, ECF No. 52.
[338] Case No. 23-41421, ECF No. 55.

were given except "Lawsuits Jackson County." The amended Schedule I listed her employment status as a cook for a school district earning $600 per month, in addition to $1,800 of business income, $800 and $2,200 of social security income for her and Mr. Steiner, respectively, making their total household income $5,200 (vs. the $5,100 in the previous Schedule I and the $5,900 in the verified motion to extend stay).

Given all the issues, at the initial hearing on confirmation, the Court set a special setting for a status conference on January 31, 2024.[339]

### UST's Filing of Motion to Dismiss with Two-Year Bar

The same day Ms. Steiner paid her filing fee and filed her schedules and statements and plan, the UST filed his motion to dismiss for abuse and to impose a two-year bar on refiling.[340] Noting that sanctions should be calculated to deter future misconduct, and that the previous bars had been insufficient to do so, the UST requested a two-year bar, arguing that "the Debtor's egregious and bizarre conduct, including ignoring prior decisions of this Court sanctioning the exact same conduct, warrants the imposition of more stringent sanctions." Ms. Steiner's response argued that there was no court ruling that she had abused the legal process and no limit on the number of bankruptcy cases a debtor could file. She also disagreed that her conduct was bizarre; if the Trustee believed her behavior was bizarre, she argued, he should file criminal charges against her; otherwise, "the Court is not designed for this." The Court also set the motion to a special setting for a status conference on January 31, 2024.[341]

### Motion to Extend Stay

The day before the 30-day deadline for extending the stay expired, Ms. Steiner filed a verified motion to extend the stay. She did not request an emergency hearing. In contrast to her sworn Schedules I and J, she represented that her monthly income in this case was $5,900 per month and her expenses were $2,000 per month, leaving $3,900 per month of monthly disposable income.[342]

The only party who objected to Ms. Steiner's motion to extend stay was Deutsche Bank., summing it up this way: "[t]here is no reason to believe this Chapter 13 will be concluded with a confirmed plan that will be completed." Deutsche Bank recited the following bleak litany of facts:

---

[339] Case No. 23-41421, ECF No. 53, 57, 79.
[340] Case No. 23-41421, ECF No. 14.
[341] Case No. 23-41421, ECF No. 56.
[342] Case No. 23-41421, ECF No. 28.

- Neither of the Steiners were employed;

- Ms. Steiner claimed to have income from a business but failed to disclose the nature of the business or provide a detailed income and expense report for the business as required;

- Ms. Steiner had failed to provide the Chapter 13 Trustee with her most recent tax returns, as also required (as she should have known from her previous bankruptcy cases, which had caused the 341 meeting to be continued;

- The Bank's loan was set to mature on April 1, 2028 (or during the life of the plan), such that Ms. Steiner was required to pay the loan in full during the life of the plan;

- That Ms. Steiner's plan estimated no arrears;

- That the loan was due for the February 1, 2012 payment and all payments thereafter;

- That although the plan called for direct mortgage payments to Deutsche Bank, Ms. Steiner had failed to make the direct payment; and

- That Ms. Steiner had failed to commence plan payments.

Ms. Steiner responded to Deutsche Bank's objection, again stating that Deutsche Bank was not the holder of the deed of trust and that its lawyers Millsap & Singer were not the Trustees on the deed of trust.[343] At the hearing, the Court did not reach Deutsche Bank's otherwise well-taken objection since the 30-day deadline for the Court to extend the stay had expired. Ms. Steiner argued with the Court that it was the Court's fault; the Court advised Ms. Steiner that she had delayed filing the motion until the last minute and failed to request an emergency hearing and that it was simply too late.[344]

### January 31, 2024, Status Conference & Intervening Events

In the meantime, the Chapter 13 Trustee objected to Ms. Steiner's $50,000 homestead exemption, given that it exceeded Missouri's limited $15,000 exemption.[345] Ms. Steiner did not respond, and the Court sustained the objection.[346]

Deutsche Bank had also timely filed a proof of claim for $92,567.47 with arrears of the same amount.[347] Ms. Steiner objected, arguing again that: Deutsche Bank did not hold the note;

---

[343] Case No. 23-41421, ECF No. 45.
[344] Case No. 23-41421, ECF No. 58.
[345] Case No. 23-41421, ECF No. 44. The Trustee had also objected on the same grounds in previous cases.
[346] Case No. 23-41421, ECF No. 61.
[347] Case No. 23-41421, POC 7-1.

and Deutsche Bank had filed a claim in November 2022 for only $30,000. Ms. Steiner also complained that Deutsche Bank had improperly doubled its attorney fees by having two trustees on the deed of trust.[348] The Bank's response again asserted it held the note and recorded deed of trust; denied it had filed a claim in November 2022 (no bankruptcy had been pending at the time); and pointed out that the attorney fees itemized in the attachment to the proof of claim were incurred in connection with multiple foreclosures or previous bankruptcy cases.[349] The Court continued the objection to the special setting.[350]

At the January 31 hearing, the Court denied Ms. Steiner's objection to Deutsche Bank's claim, reciting on the record the itemized attorney fees that had been approved in previous bankruptcy cases and incurred in connection with the foreclosures, further finding there was no doubling and that the fees of $3,250 were very reasonable under the circumstances.[351] The Court also rejected Ms. Steiner's argument that Deutsche Bank did not hold the note and deed of trust, based on the documents it provided. Ms. Steiner said she intended to object to the claim again, and the Court warned Ms. Steiner it would need evidence if she did so. Surprisingly, Counsel for Deutsche Bank then stated that Ms. Steiner had been approved for a trial loan modification. The Court told Ms. Steiner she would need to file a motion to approve the modification pursuant to local rules; denied confirmation; and directed Ms. Steiner to file an amended plan.[352] The Court also suggested to Ms. Steiner that it might not be wise to object to Deutsche Bank's claim again if she was entering into a loan modification.

The Court also addressed the UST's motion to dismiss for abuse. The Court asked Ms. Steiner what her purpose was in filing this bankruptcy case this time. She replied it was to pay her debts in full, while denying that she owed any state court debts. She requested the right to put on evidence in opposition to the UST's motion to dismiss; the UST in turn requested a short period of discovery. The Court set an evidentiary hearing for March 6.[353]

***The Trial Loan Modification; Second Amended Plan***

---

[348] Case No. 23-41421, ECF No. 62.
[349] Case No. 23-41421, ECF No. 67.
[350] Case No. 23-41421, ECF Nos. 68, 79.
[351] Case No. 23-41421, ECF No. 84.
[352] Case No. 23-41421, ECF No. 85.
[353] Case No. 23-41421, ECF No. 83.

42

To her credit, Ms. Steiner promptly filed a motion to approve a trial loan modification with Deutsche Bank.[354] The loan modification allowed Ms. Steiner to resume regular monthly plan payments at $764 per month, paid directly (rather than requiring her to pay the full $92,000+ in full through the plan, as Deutsche Bank originally requested). The Trustee objected but only to seek clarification of some details and, after clarification, the Court granted Ms. Steiner's motion.[355]

Ms. Steiner likewise timely complied with the Court's order to file an amended plan. The amended plan proposed the same $100 plan payment and incorporated the direct payments to Carrington [Deutsche Bank] of ongoing monthly mortgage payments of $764 per month with no arrears and 100% payment to unsecured creditors.[356] Unfortunately, Ms. Steiner included inconsistent treatment of Deutsche Bank in other portions of the plan. The Trustee's motion to deny confirmation raised that issue in addition to the same issues he had raised earlier (e.g., length, bad faith for failure to commit all disposable income to the plan, inability to complete a liquidation analysis, etc. in addition to the failure to provide bank statements as previously requested.[357] Deutsche Bank likewise was compelled to again object to confirmation.[358] The Court set a hearing on the confirmation issues for April 15, after the scheduled evidentiary hearing on the UST's motion to dismiss for abuse.[359]

### *The March 6 Evidentiary Hearing*

At the evidentiary hearing held on March 6, 2024, Counsel for the UST on direct presented a compelling case that Ms. Steiner's schedules and SOFA were still not complete or accurate, in that she had failed to disclose her many pending state court lawsuits and that she owned a self-settled trust never previously disclosed. During Ms. Steiner's testimony, however, it became apparent to the UST and the Court that Ms. Steiner genuinely and credibly appeared to want to end her fight with Mr. Murphy and her other creditors and to instead focus on saving 410 SW 10th as her homestead. She testified she was willing to file accurate amended schedules and work towards confirmation of a plan and said she had just been confused about how to complete the forms.

Counsel for the UST asked the Court for a recess to discuss a possible settlement and Ms. Steiner indicated she was amenable. After the recess, Counsel for the UST announced that he and

---

[354] Case No. 23-41421, ECF No. 87.
[355] Case No. 23-41421, ECF Nos. 88, 94, 100.
[356] Case No. 23-41421, ECF No. 96.
[357] Case No. 23-41421, ECF No. 102.
[358] Case No. 23-41421, ECF No. 107.
[359] Case No. 23-41421, ECF No. 110.

Ms. Steiner had indeed reached a settlement; the UST agreed that his motion to dismiss with a bar
on refiling could be denied, on the condition that Ms. Steiner file accurate amended schedules and
obtain confirmation of a plan within 90 days. Counsel for the UST also said he was willing to be
flexible with the 90-day deadline if Ms. Steiner was making progress. Ms. Steiner acknowledged
on the record that she agreed to the terms of the settlement. The Court agreed to accept the
settlement and therefore denied confirmation of the current plan and granted Ms. Steiner 30 days
to file an amended plan.[360] The Court also set a hearing in 60 days to check on Ms. Steiner's
progress.

### Ms. Steiner's "Progress"

Initially, Ms. Steiner did make progress. The Chapter 13 Trustee filed a motion to dismiss
for default a few days after the evidentiary hearing, referencing a $300 default in plan payments.[361]
Ms. Steiner's response said she had mailed in $400, and the Trustee withdrew the motion.[362] The
Missouri Department of Revenue (MDOR) had filed a motion to dismiss for failure to file tax
returns; Ms. Steiner completed and filed the returns, albeit after the Court continued the MDOR's
motion on the condition she provide a copy to MDOR after insisting she had already provide a
copy (which Counsel for MDOR denied).[363] And Ms. Steiner timely filed an amended plan and
amended schedules, including an amended Schedule E/F listing for the first time $32,000 of
unsecured creditors.[364] Unfortunately, these filings created additional problems.

Ms. Steiner's third amended plan proposed a plan payment of $1,708 per month and 100%
payment.[365] She appropriately incorporated the trial loan modification with Carrington [Deutsche
Bank] in the plan with $800 per month direct payments and no arrears. However, she also included
Deutsche Bank in the "paid in full" section of the plan with a principal balance of only $32,000.
She also itemized monthly payments to unsecured creditors. Her Amended Schedules created
different problems, since she continued to schedule ownership of 87 Green Turtle and NW 36th
(but with no liens) and projected increased business income on her Schedule I without filing the
detailed itemization, such that her Schedule J now showed $3,400 of excess disposable income.
Deutsche Bank again objected to confirmation, raising numerous issues, including the failure to

---

[360] Case No. 23-41421, ECF No. 112.
[361] Case No. 23-41421, ECF No. 118.
[362] Case No. 23-41421, ECF No. 122.
[363] Case No. 23-41421, ECF Nos. 70, 115, 151, 162, 163.
[364] Case No. 23-41421, ECF Nos. 123,124.
[365] Case No. 23-41421, ECF No. 124.

explain the significant increase in business income without any detail provided and failure to provide for payment of insurance and real estate taxes.[366] Ms. Steiner's response stated that Deutsche Bank's law firm of Millsap & Singer was not the trustee on the deed of trust, and that the original loan, made by Veteran's Affairs, had never been assigned.[367]

The Trustee's motion to deny confirmation as amended raised many of the same issues raised in earlier motions, including length, bad faith for failure to pay in all disposable monthly income, liquidation analysis (based on claimed ownership of three properties), failure to treat the Tan-Tara-A and Jack Murphy leases in the Schedule G, the discrepancy in treatment for Deutsche Bank, the itemization of the unsecured creditor payments in the plan, the incomplete SOFA, and the failure to provide the requested bank statements.[368]

In the meantime, Deutsche Bank filed a Notice claiming $2,250 in attorney fees and expenses in connection with the various responses and objections it had filed thus far in the case.[369] Ms. Steiner objected to the Trustee' motion to determine the fees, alleging that Carrington [Deutsche Bank] was not the holder of the note and, contradictorily, that Carrington had approved a loan modification.[370]

### *May 1 Status Hearing*

Before Ms. Steiner's time to respond to the Trustee's motion to deny confirmation had expired, the Court held the May 1 status hearing to check on Ms. Steiner's progress. Set at the same time was MDOR's motion to dismiss, Deutsche Bank's objection to confirmation, and Ms. Steiner's objection to Deutsche Bank's fees. As noted above, Ms. Steiner said she had filed her missing 2020 Missouri tax returns, so the Court gave her 14 days to provide a copy to MDOR's counsel. After the Court explained why the amended plan did not properly reflect Deutsche Bank's treatment under the loan modification, Ms. Steiner said she understood and would fix it.

With respect to the Millsap & Singer attorney fees incurred by Deutsche Bank, Ms. Steiner said she was confused about who Millsap & Singer was, and after the Court explained they were Deutsche Bank's attorneys, Ms. Steiner said she was satisfied and would not object. Counsel for the Chapter 13 Trustee also explained the remaining issues with confirmation, which Ms. Steiner

---

[366] Case No. 23-41421, ECF No. 129.
[367] Case No. 23-41421, ECF No. 147.
[368] Case No. 23-41421, ECF Nos. 133, 143.
[369] Case No. 23-41421, ECF No. 121.
[370] Case No. 23-41421, ECF Nos. 125, 146.

said she also understood. The Court stated it had done a rough calculation based on the filed claims and that if Ms. Steiner could obtain a permanent loan modification with Deutsche Bank, she could pay her unsecured claims in full plus a Trustee fee with a plan payment of approximately $1,807 per month for the remaining months of the plan. Ms. Steiner said she understood.

Although just about 90 days had elapsed from the evidentiary hearing, and the settlement had required Ms. Steiner to achieve confirmation within 90 days, Counsel for the UST said he was satisfied with Ms. Steiner's progress thus far and was willing to give her another 45 to 60 days. The Court therefore sustained Deutsche Bank's objection to confirmation, set a new deadline for the filing of an amended plan, and set another status conference for June 5.[371]

### *Fourth Amended Plan*

In response to the Court's order setting a deadline for the filing of an amended plan, Ms. Steiner timely filed a fourth amended plan on May 13.[372] This plan proposed a payment of $1,100 per month, with direct payments to Carrington [Deutsche Bank] of $800 per month including taxes and insurance, with 100% payment to unsecured creditors. The plan removed the conflicting treatment of Deutsche Bank and the itemized payments to unsecureds. Unfortunately, Ms. Steiner failed to file a certificate of service reflecting service on creditors, so the Court denied confirmation and set a deadline for the filing of a new plan of June 13.[373]

### *June 5 Status Hearing*

Not much could be accomplished at the June 5 status hearing since Ms. Steiner had not yet filed her fifth amended plan. Counsel for the Chapter 13 Trustee said there were still several confirmation issues, but most related to whether Ms. Steiner would be able to obtain a permanent loan modification. Ms. Steiner said that the trial loan modification period had been from February through April; that she had talked to Deutsche Bank and that they would be sending her the permanent loan modification papers. Counsel for the UST said he agreed to give Ms. Steiner more time to satisfy the settlement agreement requirement to obtain confirmation of a plan.

---

[371] Case No. 23-41421, ECF No. 151.
[372] Case No. 23-41421, ECF No. 161.
[373] Case No. 23-41421, ECF Nos. 165, 166.

In the meantime, the Chapter 13 Trustee had filed a motion to dismiss for Ms. Steiner's failure to provide him with a copy of her 2023 tax returns.[374] The Court directed Ms. Steiner to provide her tax returns to the Chapter 13 Trustee and the UST and extended Ms. Steiner's deadline to file an amended plan until June 28. The Court directed Ms. Steiner to serve the amended plan on all creditors, to timely file a certificate of service, and to file a motion to approve the permanent loan modification. The Court then set another status hearing in another 60 days.[375] At this point, 90 days had elapsed from the evidentiary hearing and Ms. Steiner's agreement to obtain confirmation within 90 days.

### Events Leading Up to the August 14 Status Hearing

Shortly after the June 4 status hearing, Ms. Steiner had filed a "Motion to Pay Out."[376] The motion was difficult to follow, but in essence asserted, based on a letter she had received, that Wilmington had never foreclosed on NW 36th; that Mr. Murphy's Trustee's deed from his purchase was "deed fraud"; that Selene Finance (as servicer for Wilmington) had not been properly appointed; and therefore that she and Mr. Steiner were entitled to be paid some $89,000 in alleged sales proceeds. Her motion requested that the Court order that amount be paid to the Steiners.

Millsap & Singer, as Counsel for Deutsche Bank (and who had cried the sale of NW 36th, on behalf of Wilmington) filed a response stating that the foreclosure sale had resulted in a surplus of $503.16, which was property of the estate (and which the Steiners had refused to accept).[377] Ms. Steiner responded that there had been no foreclosure sale and that the documents filed with the County Recorder of Deeds and the Missouri Secretary of State were all incorrect, among other nonsensical statements.[378]

Shortly thereafter, Ms. Steiner filed her Fifth Amended Plan.[379] The plan proposed a payment of, again, $1,100 per month and a 100% dividend. Unfortunately, however, the plan left the treatment to Carrington [Deutsche Bank] blank. That may have been reflective of Ms. Steiner's about-face with respect to Deutsche Bank, because the same day she filed the plan, she filed a

---

[374] Case No. 23-41421, ECF No. 171.
[375] Case No. 23-41421, ECF No. 172.
[376] Case No. 23-41421, ECF No. 179.
[377] Case No. 23-41421, ECF No. 187. The Court believes Millsap & Singer inadvertently filed the response on Deutsche Bank's behalf and that the response was intended to be filed on behalf of the firm's other client, Wilmington, based on the recitations in the response and the exhibit attached.
[378] Case No. 23-41421, ECF No. 195.
[379] Case No. 23-41421, ECF No. 182.

"Response to Loan Modification."[380] Ms. Steiner alleged in the response that she had made the three trial loan payments of $800 plus an additional payment of $400, but that the loan modification had "issues with it"; specifically, that the deed of trust on 410 SW 10th was never assigned to "anyone"; that the balance due was $47,350, and not $90,000; and that there were two trustees on the deed of trust, constituting "dual tracking."

In the meantime, the Trustee filed another motion to deny confirmation, raising all the same issues, plus a new one: that Ms. Steiner had made no plan payments since April 16.[381] Ms. Steiner responded by denying that the plan was running long; denying she was in default of plan payments; stating that the only property she owned in Camden County was 87 Green Turtle; that she only had one lawsuit left; that she would amend her SOFA; and that Deutsche Bank was not the holder of the note.[382] She also filed a belated objection to attorney fees that the Court had previously allowed, stating that Millsap & Singer could not be the trustee since Deutsche Bank was never the holder of the note.[383] Deutsche Bank also filed another objection to confirmation on the grounds the plan failed to treat its debt or provide for payment of insurance and real estate taxes.[384] The Court set all these matters for the August 14 status hearing.

### August 14 Status Hearing

With respect to confirmation issues, the Counsel for the Chapter 13 Trustee reported at the August 14 status hearing that there were still numerous confirmation issues. The plan was running long because of $150,000 in student loan claims that had been filed, plus, on account of the fact no permanent loan modification had been approved (and had been due by August 5), the Trustee had loaded Deutsche Bank's $92,000 secured claim to be paid in full. The Trustee also reported that Ms. Steiner was not current with plan payments, although she was only one month behind. The Trustee also said that he had never received the bank statements he had been requesting since the inception of the case or the schedule and SOFA amendments requested.

Counsel for Deutsche Bank reported that Deutsche Bank had sent the permanent loan modification papers to Ms. Steiner twice, but Ms. Steiner had refused to sign them. Deutsche Bank

---

[380] Case No. 23-41421, ECF No. 183.
[381] Case No. 23-41421, ECF No. 191.
[382] Case No. 23-41421, ECF No. 200.
[383] Case No. 23-41421, ECF No. 201.
[384] Case No. 23-41421, ECF No. 196.

was therefore standing on its objection to confirmation that its loan should be paid in full through the plan with a provision for payment of insurance and real estate taxes and contractual interest.

Unfortunately, Ms. Steiner's response did not help her. Ms. Steiner said she would not agree to a permanent loan modification because she only owed $40,000 – not $90,000 – to Deutsche Bank and that she had another four years before the loan matured. For his part, Counsel for the UST said he would not request dismissal as of yet but would ask for dismissal with imposition of the two-year refiling bar if Ms. Steiner failed to achieve confirmation of a plan by the next hearing.

The Court pointed out that the bankruptcy case had been filed on October 11, 2023; there had been five plans filed, all unconfirmable; that Deutsche Bank had been required to file four objections to confirmation; and that one year should be sufficient to confirm a plan. The Court said it would grant one more continuance but if the plan were not confirmed or confirmable by the next hearing, it would grant the motion to dismiss and impose the two-year bar. The Court therefore denied Ms. Steiner's objection to her own loan modification; denied Ms. Steiner's motion to pay out in part but ordered the funds on hand with Millsap & Singer be paid to the Chapter 13 Trustee; denied her objection to the notice of fees; sustained the Trustee's motion to deny confirmation; sustained Deutsche Bank's objection to confirmation; and set a deadline for the filing of an amended plan by September 4 with appropriate treatment of the student loans and Deutsche Bank.[385] The Court continued the UST's motion to dismiss to October and set another status hearing of October 23 on the condition that the plan be confirmed by the next hearing.[386] At this point, Ms. Steiner was 60 days past the 90 days in which she had agreed to obtain confirmation, or five months after the evidentiary hearing.

### *Events Leading Up to the October 23 Hearing*

Ms. Steiner appeared to backtrack on her assurances she wanted no more fights with her creditors before the next hearing. She filed a nonsensical "Debtor's Deed of Trust on 410 SW 10th Street and Payment Account that Debtor did not pay."[387] She objected again to Deutsche Bank's claim on the nonsensical grounds "it was changed on Debtor's [unintelligible] statement."[388] She

---

[385] Case No. 23-41421, ECF Nos. 207, 209, 210, 211.
[386] Case No. 23-41421, ECF No. 208.
[387] Case No. 23-41421, ECF No. 215.
[388] Case No. 23-41421, ECF No. 217.

filed a statement accusing Millsap & Singer of filing false statements with the Court.[389] Yet, her amended plan, filed timely, proposed to pay Carrington [Deutsche Bank] $92,000 through the plan with a provision for insurance and real estate taxes, albeit lowering the plan payment to $500 per month.[390] The Chapter 13 Trustee's motion to deny confirmation and Deutsche Bank's objection to confirmation quickly followed, as did Deutsche Bank's response to Ms. Steiner's claim objection.[391]

But then, just as quickly, Ms. Steiner, changed course, appearing to be back on track for again making progress towards confirmation. She filed an amended plan increasing the payment to $2,000 and an amended Schedule I showing she had obtained another job and increased her income, with payment in full to Deutsche Bank (albeit in the wrong section of the plan).[392] Her response to the Trustee's motion to deny confirmation stated she had finally provided the Chapter 13 Trustee her bank statement and her response to Deutsche Bank's objection attempted to address the length and feasibility issues.[393] Deutsche Bank's new objection to confirmation and the Trustee's new motion to deny confirmation still raised issues, but with a $2,000 per month plan payment the plan length was reduced to 81 months, instead of the more than 100 months it had been running.[394] Ms. Steiner made another attempt to fix the issues shortly before the October 23 hearing by filing another amended plan, with Deutsche Bank's treatment in the correct section to be paid in full.[395]

### October 23 Status Hearing

Notwithstanding that Ms. Steiner had not filed a confirmable plan or achieved confirmation by October 23, the Court at that hearing – over the strong objection of Deutsche Bank's counsel – gave Ms. Steiner one more chance. The UST's counsel stated on the record he had agreed to one more continuance. The Court stated that with the most recent plan Ms. Steiner was 80% of the way to confirmation and with what now appeared to be some stable income to make a plan feasible. The Court directed Ms. Steiner to file a 100% payment plan; to address the escrow treatment; to address interest to be paid to Deutsche Bank (7%); to provide the rest of the bank statements the

---

[389] Case No. 23-41421, ECF No. 218.
[390] Case No. 23-41421, ECF No. 216.
[391] Case No. 23-41421, ECF Nos. 224, 227, 228.
[392] Case No. 23-41421, ECF Nos. 233, 234.
[393] Case No. 23-41421, ECF Nos. 235, 236.
[394] Case No. 23-41421, ECF Nos. 238, 243.
[395] Case No. 23-41421, ECF No. 252.

Chapter 13 Trustee had requested, plus documentation regarding the student loans to show they qualified for direct payment. The Court stated that no one – least of all the Court – wanted to see Ms. Steiner fail, be barred, and then file bankruptcy again. But, the Court warned, if the plan was not confirmed or confirmable by the next hearing, the Court would grant the motion to dismiss with the two-year bar. The Court set the next hearing for December 18, conditioned on a confirmable plan being filed before then, and set a deadline for the filing of an amended plan.[396] At this point, Ms. Steiner was about 120 days past the 90 days in which she had agreed to obtain confirmation, or seven months after the evidentiary hearing.

***Events Leading Up to the December 18 Hearing & December 18 Hearing***

Recall that Ms. Steiner had filed an unconfirmable plan shortly before the October 23 status hearing and that the Court at the October 23 hearing had denied confirmation of that plan. Deutsche Bank nonetheless filed an objection to confirmation of that plan after the October 23 hearing, alleging it was entitled to contract interest of 7% on the full payment of its claim through the plan and a provision for the payment of insurance and real estate taxes, and that the plan was otherwise proposed in bad faith.[397] The Trustee likewise filed a motion to deny confirmation on various issues.[398] Ms. Steiner did file an amended plan – her ninth – in response to the Court's deadline.[399] The plan was not confirmable, however, since Ms. Steiner had once again reverted to treating Deutsche Bank's claim in the "cure and maintenance" section of the plan, rather than as a claim to be paid in full. The amended plan also failed to provide for interest on Deutsche Bank's claim. Ms. Steiner nonetheless filed a statement in support of her own amended plan that she had provided for payment of interest.[400] She filed a separate statement that she would pay the insurance and real estate taxes directly,[401] and another statement that she had provided her bank statements and student loan documents to the Trustee.[402]

In response, the Trustee moved to deny confirmation, but – for the first time – on only two grounds: first, in essence that Deutsche Bank's treatment was in the wrong section of the plan, making the escrow provisions relating to the payment of taxes and insurance incorrect; and second,

---

[396] Case No. 23-41421, ECF No. 257.
[397] Case No. 23-41421, ECF No. 261.
[398] Case No. 23-41421, ECF No. 265.
[399] Case No. 23-41421, ECF No. 269.
[400] Case No. 23-41421, ECF No. 270.
[401] Case No. 23-41421, ECF No. 271.
[402] Case No. 23-41421, ECF No. 272.

requesting more information to show that the student loans should be treated as long term debt that could be paid directly.[403] Unfortunately, Deutsche Bank was again compelled to object to its improper treatment as a "cure and maintenance" loan instead of paying the loan in full over the life of the plan with interest and with provision for payment of insurance and taxes. Deutsche Bank also reiterated its bad faith objection.[404]

Ms. Steiner in turn filed a tenth amended plan. This plan proposed to pay Deutsche Bank in full with interest and provided for payment of insurance and real estate taxes.[405] Her statement that she was treating the Bank appropriately, however, was undercut by a document she filed the same day stating that $92,000 was not the balance of the Bank's claim and that it was the Bank – and not she – who paid the insurance and taxes.[406] The Trustee responded with another motion to deny confirmation, filed within days of the upcoming December 18 hearing, that Ms. Steiner was now delinquent in plan payments in the amount of $2,012.84; that the plan was still running long, at 85 months; that the mortgage treatment was unclear; and that documentation regarding the student loans had still not been provided.[407] Faced with these irrefutable facts, the Court at the December 18 hearing granted the UST's motion to dismiss and said it would impose a two-year bar on refiling and would enter an order detailing its findings of fact and conclusions of law. Additional findings of fact will be noted below.

### Conclusions of Law

*Motion to Dismiss with Prejudice*

Section 1307(c) provides that, on request of a party in interest or the UST, the bankruptcy court may convert a chapter 13 case to a case under chapter 7 or dismiss the case, whichever is in the best interest of creditors and the estate, for cause.[408] A debtor's bad faith constitutes "cause" for conversion or dismissal of the case.[409] Determination of a debtor's bad faith is a factual inquiry based upon the totality of the circumstances including the debtor's atypical conduct, attempts to manipulate or abuse the bankruptcy process, inaccuracies in stated debts and expenses, and

---

[403] Case No. 23-41421, ECF No. 273.
[404] Case No. 23-41421, ECF No. 276.
[405] Case No. 23-41421, ECF No. 279, 281. Her response says it is filed in response to the Trustee's motion to dismiss but the Court construes it to mean it was filed in response to the Trustee's motion to deny confirmation.
[406] Case No. 23-41421, ECF No. 280.
[407] Case No. 23-41421, ECF No. 284.
[408] 11 U.S.C. § 1307.
[409] *In re Molitor*, 76 F.3d 218, 220 (8th Cir. 1996).

fraudulent representations.[410] Serial filers act in bad faith when the multiple filings are merely delay tactics intended to abuse the bankruptcy system or to relitigate past claims.[411]

Ms. Steiner agreed to a conditional order requiring that she file a confirmable plan within 90 days from the March 6 hearing.[412] Ms. Steiner has failed to file a confirmable plan, notwithstanding that the Court and the UST gave her until December – or nine months – to do so, and after she had been in bankruptcy for more than a year.  Although Ms. Steiner's failure to comply with her settlement agreement and the Court's conditional order of continuance are sufficient grounds to dismiss her case (in addition to her payment default), Ms. Steiner's lack of good faith provides another basis for this dismissal.

Ms. Steiner made numerous arguments that she filed this case in good faith. First, Ms. Steiner asserts that her errors and omissions were the result of her inability to understand the bankruptcy forms.[413] But this claim conflicts with Ms. Steiner's history of serial bankruptcy filings. Ms. Steiner's past eleven cases should have provided her with an understanding of the importance of full and accurate disclosures in a bankruptcy proceeding. Furthermore, this Court has given Ms. Steiner numerous opportunities to obtain counsel, to amend her plan and schedules, and to discuss issues regarding plan confirmation with her creditors, the Chapter 13 Trustee, and the UST. Yet, Ms. Steiner has routinely failed to timely and sufficiently remedy the problems with her schedules, statements, and plans. Ms. Steiner's other arguments about why this case was filed in good faith and should not be dismissed all ring hollow.

Ms. Steiner's only argument with any credibility is that she filed this case in good faith to obtain a permanent loan modification and to save her home. The UST certainly thought that was true as of the March evidentiary hearing or he would not have proposed the settlement. The Court thought it was true as well at the time. But Ms. Steiner's conduct and actions after the hearing have

---

[410] *In re Steiner*, 613 B.R. 176, 178 (B.A.P. 8th Cir. 2020) (citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 382 (2007)).

[411] *See In re Molitor*, 76 F.3d 218, 221 (8th Cir. 1996) (the debtor's multiple filings, one of which was on the eve of foreclosure, revealed the debtor's bad faith "delay tactics"); *In re Steiner*, 613 B.R. 176 (B.A.P. 8th Cir. 2020) (the Steiner's repeated filings evidenced a "long-running scheme to manipulate and abuse the Bankruptcy Code and the bankruptcy system to the extreme detriment of their creditors", constituting bad faith); *In re Marshall*, 407 B.R. 359, 362 (B.A.P. 8th Cir. 2009) (a debtor's filing of excessive motions throughout various bankruptcy cases with the intention to relitigate past issues constituted bad faith); *In re Steiner*, No. 20-41952-CAN13, 2022 WL 419942, at *4 (Bankr. W.D. Mo. Feb. 10, 2022) (finding that Deborah Steiner filed in bad faith to stall the purchaser of her property at a foreclosure sale from taking possession and to avoid paying for the property).

[412] Case No. 23-41421, ECF No. 112.

[413] Case No. 23-41421, ECF No. 35.

eviscerated any belief the Court had that Ms. Steiner's professed sincerity was genuine. After signing a trial loan modification requiring her to acknowledge Deutsche Bank as the holder of her loan and making three months of trial payments, she refused to execute the permanent loan modification, on the spurious grounds Deutsche Bank never owned the loan and in the face of overwhelming documentary evidence to the contrary. She continued to object to Deutsche Bank's claim and make other arguments contrary to and inconsistent with the Court's rulings that Deutsche Bank held the deed of trust on 410 SW 10th St.

When evaluating the totality of circumstances, the Court cannot ignore the overwhelming evidence of bad faith in the extreme: the inaccurate schedules; the delays; the filing of frivolous objections, responses and motions; the attempts to relitigate issues already decided by the Bankruptcy or state courts; the failure to remain current on plan payments; the failure to timely provide requested documents to the Chapter 13 Trustee; the failure to obtain confirmation despite having had more than a year and having filed no less than ten plans; the repudiation of notes, deeds of trust, leases and other agreements she had clearly executed; and the pattern of behavior and stall tactics repeated over and over with each of her secured creditors over years. Under the totality of the circumstances, this Court cannot find that Ms. Steiner's current bankruptcy case was filed for a legitimate purpose. Rather, the Court finds and concludes that Ms. Steiner filed this bankruptcy case as another of her bad faith attempts to abuse her creditors and the bankruptcy system.

### *Sanctions, including a Two-Year Bar to Refiling*

Pursuant to § 109(g)(1), a court may issue a 180-day bar on refiling if a debtor's case was dismissed for the "willful failure of the debtor to abide by the orders of the court." Section § 349(a) also empowers bankruptcy courts to enjoin future filings if cause exists to do so, and § 105(a) permits bankruptcy courts to enter any order necessary to prevent an abuse of the bankruptcy process. Bankruptcy courts derive from §§ 105(a) and 349(a) – in addition to their inherent equitable power to prevent abuse – the power to sanction bad faith serial filers by prohibiting further bankruptcy filings for more than 180 days.[414] Barring subsequent refiling is a severe sanction and is only warranted when the debtor engages in egregious misconduct.[415] Serial filings intended to thwart a secured creditor from foreclosing on its collateral, prevent eviction, evade

---

[414] *In re Steiner*, 613 B.R. 176, 179 (B.A.P. 8th Cir. 2020).
[415] *Id.*

payments on property, or preclude the purchaser of property from taking possession are egregious abuses of the bankruptcy system deserving of a bar from refiling exceeding 180 days.[416]

Despite receiving numerous bars on refiling by this Court, Ms. Steiner continues to file bankruptcy cases for the sole purpose of evading and harassing her creditors. While Ms. Steiner claims that this case was filed for the purpose of obtaining a loan modification, Ms. Steiner failed to act in good faith to accomplish that goal. Instead, Ms. Steiner resorted to making contradictory and frivolous arguments to the Court, causing her creditors significant delay and expense. Ms. Steiner rejected Deutsche Bank's offer of a permanent loan modification and failed to achieve confirmation despite being given numerous opportunities to do so. Ms. Steiner's actions demonstrate her disregard for the seriousness of these proceedings and demonstrate to the Court that its previous bars were insufficient to deter Ms. Steiner's abuse. The Court therefore finds and concludes that Ms. Steiner's serial filings and her conduct in this case constitute an egregious abuse of the bankruptcy system, and she should accordingly be barred from filing a bankruptcy petition for a period of two years.

## SUMMARY & CONCLUSION

By this Court's rough count, the litigation involving 87 Green Turtle spanned almost 15 years. A review of the state court cases shows that, all totaled, the Steiners filed at least five state court cases relating to 87 Green Turtle and asserted numerous counterclaims in the three cases in which Tan-Tar-A sued them. They filed at least ten state court appeals, all of which they lost, or which were dismissed. Through their respective bankruptcy cases, they filed dozens of plans, motions, and objections involving Tan-Tar-A, almost all baseless. They continued their attempts to relitigate their loss of 87 Green Turtle in both state and bankruptcy courts for five years after the state court found their interest had been extinguished under Missouri law.

The Steiners' abuses with respect to 87 Green Turtle set the pattern for their treatment of Wilmington and Jack Murphy and the property on NW 36th. Notwithstanding Mr. Murphy's purchase of the property in August 2019, the Steiners again filed multiple state court lawsuits and appeals – all unsuccessful – and continued the spurious litigation in bankruptcy court, again with

---

[416] *In re Steiner*, No. 20-41952-CAN13, 2022 WL 419942, at *4 (Bankr. W.D. Mo. Feb. 10, 2022); *see also In re Marshall*, 407 B.R. 359, 363 (B.A.P. 8th Cir. 2009) (egregious misconduct exists when a debtor files a series of bankruptcy petitions, strategically timed to thwart a secured creditor from foreclosing on its collateral); *In re Rusher*, 283 B.R. 544, 549 (Bankr. W.D. Mo. 2002) (Judge Federman holding that serial filer who evaded paying creditors in excess of two years and eleven months acted in bad faith and a three-year bar from refiling was appropriate).

numerous and repeated frivolous arguments and filings and over a length of years. And Ms. Steiner repeated the pattern with Deutsche Bank – filing on the eve of foreclosure, filing spurious objections, filing state court lawsuits, and attempting to relitigate issues she has lost. With respect to each of these creditors, the hours of time and expense wasted on Ms. Steiner's filing have been enormous; the Court cannot begin to estimate how much time and resources it has wasted over the course of the last (now) fourteen years.

Which leads us to this case. Notwithstanding an opportunity to end the cycle of endless litigation, Ms. Steiner spurned the opportunity to modify her loan with Deutsch Bank, a loan with a balance of $44,000 in 2010, which more than doubled by the time this case was filed in 2023, in large part because of attorneys fees, interest, and other charges accrued through the many bankruptcy cases, state court lawsuits, and failed appeals. As if the Court had any doubt as to whether Ms. Steiner had learned her lesson, the Court takes judicial notice of the fact that the day this Court announced it was dismissing this case, Ms. Steiner filed another lawsuit against Deutsche Bank in state court.[417]

Based on the forgoing findings of fact and conclusions of law, the Motion of the United States Trustee to dismiss the case and bar Ms. Steiner from refiling any bankruptcy case is GRANTED. A separate order shall issue.

IT IS SO ORDERED.

DATED: 2/14/2025


 /s/ Cynthia A. Norton
Judge Cynthia A. Norton

---

[417] *Deborah Steiner v. Carrington Mortgage Services*, Jackson County Circuit Co. No. 2416-CV36359.